**In re D.R.**

[Cite as *In re D.R.*, 153 Ohio App.3d 156, 2003-Ohio-2852.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 21218.

Decided June 4, 2003.

Joseph R. Spoonster, for appellant.

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Richard S. Kasay, Assistant Prosecuting Attorney; and Thomas A. Shumaker, for appellee.

Per Curiam.

{¶ 1} Appellant, Virginia Smith ("grandmother"), appeals the decision of the Summit County Court of Common Pleas, Juvenile Division, which denied her

motion for legal custody of D.R., her granddaughter, and granted the motion of appellee, mother of D.R. ("mother"), for return of custody. This court reverses and remands.

I

{¶ 2} Mother gave birth to D.R. on February 21, 2001. D.R. was born two months premature. At the time of her daughter's birth, mother was unemployed and suffering from chronic fibromyalgia. Mother lived with her two teenage daughters, and their home lacked heat and was not equipped to accommodate a premature baby. Mother had not received any prenatal care while pregnant, and she did not have a regular physician or pediatrician to monitor and treat the medical conditions caused by D.R.'s premature birth. Mother was also unfamiliar with how to care for a premature baby when D.R. was born.

{¶ 3} On March 7, 2001, Summit County Children Services Board ("CSB") filed a dependency and neglect complaint and took custody of D.R. at the hospital. The juvenile court granted CSB emergency temporary custody, and D.R. was placed with grandmother. An adjudication hearing was held, and by stipulated agreement, D.R. was found to be a dependent child under R.C. 2151.04. The allegations of neglect were dismissed. Mother's two teenage daughters were also found to be dependent, and CSB was awarded temporary custody of all three children. CSB continued D.R.'s placement with grandmother, and the teenage girls were placed with their father.

{¶ 4} At the adjudication hearing, mother received a reunification case plan that listed the requirements she must meet in order to regain custody of D.R. Mother's case plan provided that she obtain a full-scale assessment at Portage Path Behavioral Health, obtain suitable housing and meet the needs of her children, complete a drug and alcohol assessment, attend battered women support groups, and submit to random urine screens.

{¶ 5} On September 20, 2001, grandmother filed a motion seeking legal custody of D.R. CSB filed a motion for change of disposition from temporary to legal custody of D.R. to grandmother on January 17, 2002. That same day, mother filed a motion for return of custody of D.R., as well as her two teenage daughters. A custody hearing was held on July 17, 2002. Following the hearing, the juvenile court found that (1) mother had fully complied with her reunification case plan, (2) mother had remedied the problems that caused her to lose custody of D.R., and (3) the evidence presented did not establish that she was an unsuitable mother for D.R. The court denied both grandmother's and CSB's motions, granted mother's motion, and ordered the return of custody of D.R. to mother.

{¶ 6} Grandmother obtained a stay of this order and timely appealed, setting forth one assignment of error for review.

II

## ASSIGNMENT OF ERROR

"The juvenile court's return of legal custody of the minor child [D.R.] to appellee [mother of D.R.] and denial of appellant's motion for legal custody is against the manifest weight of the evidence and is an abuse of discretion as the return of legal custody to appellee is both detrimental to the child and against the child's best interests."

{¶ 7} In her sole assignment of error, grandmother asserts that the juvenile court abused its discretion in returning legal custody of D.R. to mother. Following an adjudication that D.R. was a dependent child, D.R. was placed in the temporary custody of CSB. On July 17, 2002, the trial court held another dispositional hearing. The pending motions before the trial court were mother's motion for legal custody of D.R., grandmother's motion for legal custody, and CSB's motion that D.R. be placed in the legal custody of grandmother.

{¶ 8} In its judgment entry granting legal custody to mother, the trial court indicated that it was bound by *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047, which provided in its syllabus:

"In an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability—that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child."

{¶ 9} The trial court concluded that it was required by *Perales* to give mother's request for legal custody preference over grandmother's motion, unless a preponderance of the evidence established that mother was unsuitable, based on one of the four reasons listed in *Perales*. The trial court found that the evidence had failed to establish that mother was unsuitable. Because the trial evidence did not satisfy the unsuitability hurdle, it appears that that the trial court did not even consider grandmother's request for legal custody. Because the trial court applied the wrong legal standard in considering these motions for legal custody, this court must reverse and remand for a new dispositional hearing.

{¶ 10} The trial court was mistaken in its belief that, at this dispositional hearing, it could not award legal custody to a nonparent without first finding the

parent unsuitable. The Ohio Supreme Court's decision in *In re Perales*, 52 Ohio St.2d at 89, 6 O.O.3d 293, 369 N.E.2d 1047, and this court's decision in *Baker v. Baker* (1996), 113 Ohio App.3d 805, 813, 682 N.E.2d 661,[1] by their explicit language, apply only to legal custody proceedings filed pursuant to R.C. 2151.23(A)(2), which applies to private custody actions between presumptively fit parents and nonparents. That is not the type of proceeding that was conducted below.

{¶ 11} The dispositional hearing at issue was held to determine whether the then-current disposition of D.R., who had already been adjudicated a dependent child and placed in the temporary custody of CSB, should be changed to place the child in the legal custody of either mother or grandmother. Such a proceeding is governed by an entirely different statutory scheme from R.C. 2151.23(A)(2), which governed the legal custody motions at issue in *Perales*. The requirement of *Perales* that a trial court first find a parent unsuitable before awarding legal custody of the child to a nonparent does not apply to dispositional hearings following an adjudication that the child is abused, dependent, or neglected. *In re Farrow*, 10th Dist. No. 01AP–837, 2002-Ohio-3237, 2002 WL 1377798; *In re McQuitty* (May 5, 1986), 12th Dist. No. CA85–04–016, 1986 WL 5151.

"Although the suitability of the parents to have custody of the child is a factor that courts hearing child dependency and neglect actions pursuant to Chapter 2151 must consider, courts need not expressly find the parents to be unsuitable before awarding custody to a nonparent." *In re Johnson* (Mar. 29, 1995), 4th Dist. No. 94CA2003, 1995 WL 146064.

{¶ 12} The Ohio Supreme Court has never extended *Perales* to legal custody decisions in cases of abuse, dependency, or neglect under R.C. Chapter 2151. In fact, in *In re Cunningham* (1979), 59 Ohio St.2d 100, 13 O.O.3d 78, 391 N.E.2d 1034, the Supreme Court held that once a child has been adjudicated dependent, as defined in R.C. 2151.04, the trial court's dispositional orders are primarily concerned with the best interests of the child. Id. at 103, 13 O.O.3d 78, 391 N.E.2d 1034. Although the court recognized that a "best interests" analysis may necessarily be intertwined with the concept of parental fitness, "the fundamental or primary inquiry at the dispositional phase of these juvenile proceedings is not whether the parents of a previously adjudicated 'dependent' child are either fit or unfit." Id. at 106, 13 O.O.3d 78, 391 N.E.2d 1034.

{¶ 13} The *Cunningham* court confined its analysis to the requirements of the dependency and neglect statutes for, unlike the custody dispute at issue in *Perales*, trial courts in child dependency and neglect cases are guided by a fairly comprehensive statutory scheme. See Id. at 102–103, 6 O.O.3d 293, 369 N.E.2d

---

1. The trial court indicated that *Baker* applied here as well.

1047. The explicit language of R.C. 2151.353, which applies to dispositional orders after the child has been adjudicated abused, dependent, or neglected, did not then (and does not now) include any requirement that the trial court make a further finding of parental unfitness before implementing any of the enumerated dispositional alternatives. Id. at 103, 6 O.O.3d 293, 369 N.E.2d 1047. The *Cunningham* court did not judicially add protection of the parent's rights that the legislature had failed to address, as the court did in *Perales.*

{¶ 14} The dependency-and-neglect provisions of R.C. Chapter 2151 seek to balance parental rights with the best interests of the child. *In re Johnson,* 4th Dist. No. 94CA2003. Consequently, an adjudication of dependency must be established by clear and convincing evidence.[2] Id. R.C. 2151.04 defines a "dependent child" as any child:

"(A) Who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian;

"(B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian;

"(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;

"(D) To whom both of the following apply:

"(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.

"(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household."

{¶ 15} An adjudication of dependency implies that the parents are unsuitable. *In re Johnson.* Each of the above statutory reasons for finding a child dependent tends to encompass the final *Perales* reason for finding a parent unsuitable, "that an award of custody to the parent would be detrimental to the child." *Perales,* 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047 at syllabus; see, also, *In re Justice* (1978), 59 Ohio App.2d 78, 13 O.O.3d 139, 392 N.E.2d 897; *Linger v. Weiss* (1979), 57 Ohio St.2d 97, 101, 386 N.E.2d 1354 (implying that an adjudication that a child is neglected necessarily encompasses a consideration of parental fitness and the child's best interests).

---

2. Although Mother stipulated to dependency here, she had the opportunity to contest the issue, which would have required CSB to present clear and convincing evidence.

{¶ 16} R.C. 2151.353(A) sets forth the dispositional alternatives available to the trial court following an adjudication of dependency. Those alternatives include: "(3) [a]ward[ing] legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]" As in the case of the subsection at issue in *Cunningham,* there is no requirement in the statute that the parent be found unsuitable before the trial court considers legal custody to a nonparent. The statute seems to place them on equal footing.

{¶ 17} Consequently, the trial court should have considered each of the motions for legal custody of D.R. based on a best-interest standard, without the additional hurdle that grandmother first establish mother's unsuitability. Because the trial court failed to apply the correct standard, this court reverses and remands for a new dispositional hearing. The assignment of error is sustained accordingly.

### III

{¶ 18} Grandmother's sole assignment of error is sustained. The judgment of the juvenile court is reversed and remanded.

Judgment reversed
and cause remanded.

SLABY, P.J., and BAIRD, J., concur.

CARR, J., concurs in judgment only.