DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, C.W. ("Mother"), appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division, that granted legal custody of her four minor children to relatives. We affirm.
 i. {¶ 2} On August 15, 2001, Summit County Children Services Board ("CSB") filed a dependency and neglect complaint. The juvenile court granted CSB emergency temporary custody of F.W., C.W., T.W., and R.W. ("the children"). An adjudication hearing was held, and the juvenile court found the children to be dependent under R.C. 2151.04; the allegation of neglect was dismissed. Thereafter, CSB moved to modify the temporary custody order to protective supervision. The juvenile court granted the motion and gave Mother custody of the children with an order of protective supervision. CSB again moved for emergency temporary custody of the children. The juvenile court granted the motion, and it later ordered a six-month extension of temporary custody to CSB. Subsequently, CSB moved the juvenile court to grant legal custody of the children to relatives. Mother then moved for a six-month extension of temporary custody. The juvenile court granted CSB's motion, thereby conferring legal custody of the children to relatives, and it denied Mother's motion. Mother timely appeals, and raises two assignments of error for review.
 II. A. First Assignment of Error
"The Trial Court's decisions to deny [mother's] motion for a six month extension of temporary custody of the children to [CSB] and grant the motions of [CSB] was [sic.] against the manifest weight of the evidence."
 {¶ 3} In her first assignment of error, Mother challenges the adequacy of the evidence presented at trial. Specifically, Mother avers that the juvenile court's decision to grant CSB's motion for legal custody and its decision to deny her motion for a six-month extension were contrary to the manifest weight of the evidence. We disagree.
 {¶ 4} When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), 9th Dist. No. 18983. In determining whether a criminal conviction is against the manifest weight of the evidence:
"`[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [jury/trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment].'" State v. Thompkins (1997),78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175; see, also, State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 5} "Every reasonable presumption must be made in favor of the judgment and the findings of facts [of the juvenile court]." Karches v.Cincinnati (1988), 38 Ohio St.3d 12, 19. Moreover, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment." Id., citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Accordingly, before an appellate court will reverse a judgment as against the manifest weight of the evidence, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
 {¶ 6} A juvenile court retains the discretion to grant or deny a motion for legal custody. In re Jones (May 2, 2001), 9th Dist. No. 20306. In addition, the discretion to grant or deny a motion for a six-month extension of temporary custody lies with the juvenile court. Inre Freeland (Aug. 9, 2000), 9th Dist. Nos. 19980, 19981, 19982, 19983. As such, an appellate court will not reverse such decisions absent an abuse of discretion. See In re Jones, supra. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 7} At the dispositional hearing, Dr. Penny Griffith, a clinical psychologist, testified that she does not believe that the children had been supervised by Mother in the past. Dr. Griffith further testified that Mother was not aware that the children were attending counseling sessions. Finally, Dr. Griffith conveyed that that children's needs had been met in their respective foster placements.[1]
 {¶ 8} Karyn Meeks ("Meeks"), a counselor at the Community Health Center, testified that she provided Mother with counseling for her substance abuse problem; Mother's substance abuse counseling addressed both her marijuana and alcohol addictions. Meeks stated that Mother's attendance at the counseling sessions was inconsistent. She noted that Mother "dropped" a urine sample in December of 2002, and the sample tested positive for marijuana.
 {¶ 9} Vincent Maffei ("Maffei"), a protective caseworker at CSB, testified that Mother had a history of being homeless. He also testified that he had concerns regarding the family, namely, the parents' ability to provide food, shelter, and clothing for the children. Maffei asserted that Mother complied minimally with her required drug screens, and that she has failed to comply with her substance abuse case plan requirement. He acknowledged that Mother rarely missed a scheduled visit with the children, and that the children have a bond with Mother. Nevertheless, Maffei maintained that he believed it was in the children's best interest to grant CSB's motion for legal custody. He explained that Mother has not proven to CSB that she has recognized her drug and alcohol problem; that she has the ability to parent the children; that she has maintained independent housing for a significant period; and that she has enough income and social services to parent the children.
 {¶ 10} Mother testified and admitted that she used marijuana. She additionally testified that she does not believe that she is "in a position to provide for the basic needs of [her] children[.]"
 {¶ 11} In this case, the record indicates that the juvenile court reviewed the parties' respective motions, the testimony presented at trial, and the Guardian ad Litem's report. Based upon this evidence, the juvenile court found that granting legal custody in favor of relatives was in the best interest of the children. We note that the record on appeal is incomplete; specifically, Mother has failed to include the Guardian ad Litem's report, as required by App.R. 9. An appellant bears the burden of ensuring that the record necessary to determine the appeal is filed with the appellate court. App.R. 9(B). See State v. Williams
(1995), 73 Ohio St.3d 153, 160. If the record is incomplete, the reviewing court must presume the regularity of the juvenile court's proceedings and affirm its decision. Knapp v. Edwards Laboratories
(1980), 61 Ohio St.2d 197, 199. See, also, Wozniak v. Wozniak (1993),90 Ohio App.3d 400, 409 (declaring where portions of the record are omitted, which are necessary for effective review, the appellate court must affirm). As the juvenile court explicitly based its finding, in part, on the Guardian ad Litem's report and, in the absence of the complete record, we must presume that the Guardian ad Litem's report, combined with the record on appeal, supports the finding that granting legal custody of the children to relatives was in the best interest of the children. See Knapp, 61 Ohio St.2d at 199; Wozniak,90 Ohio App.3d at 409. As such, we cannot say that the juvenile court abused its discretion when it granted CSB's motion for legal custody or when it denied Mother's motion for a six-month extension of temporary custody. Furthermore, we do not find that the juvenile court's decision was against the manifest weight of the evidence. Consequently, Mother's first assignment of error is overruled.
 B. Second Assignment of Error
"The Trial Court erred by granting custody of the children to third parties and not making a finding of parental unfitness of [mother], [P.S.], and [T.S.]."
 {¶ 12} In her second assignment of error, Mother contends that the juvenile court erroneously granted legal custody of the children to relatives without first making a determination that she, P.S.,[2] and T.S.[3] were unsuitable parents, as required by In re Perales (1977),52 Ohio St.2d 89.[4] Mother's contention lacks merit.
In Perales, the Supreme Court of Ohio stated
"In an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability — that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." 52 Ohio St.2d 89, syllabus.
 {¶ 13} This requirement, that the hearing officer must make a finding of parental unsuitability before awarding custody to a nonparent, only applies to legal custody matters instituted in accordance with R.C. 2151.23(A)(2). Id. at 89; Baker v. Baker (1996),113 Ohio App.3d 805, 807, fn. 1. R.C. 2151.23(A)(2) is applicable to those private custody matters involving presumptively fit parents and nonparents. See In re D.R., 153 Ohio App.3d 156, 2003-Ohio-2852, at ¶ 10.
 {¶ 14} The instant case does not fit within the factual framework of Perales. Specifically, this case does not involve a private custody matter between presumptively fit parents and nonparents. Instead, a dispositional hearing was held to determine if the disposition of the children, who had previously been adjudicated dependent and placed in the temporary custody of CSB, should be changed to grant legal custody of the children to relatives. This factual scenario is not governed by the same statute that was at issue in Perales. See id. at ¶ 11. Accordingly, at the dispositional hearing, the juvenile court need not "first find a parent unsuitable before awarding legal custody of the child to a nonparent * * * following an adjudication that the child is abused,dependent, or neglected." (Emphasis added.) Id., citing In re Farrow,
10th Dist. No. 01AP-837, 2002-Ohio-3237; In re McQuitty (May 5, 1986), 12th Dist. No. CA85-04-016.
"Although the suitability of the parents to have custody of the child is a factor that courts hearing child dependency and neglect actions pursuant to Chapter 2151 must consider, courts need not expressly find the parents to be unsuitable before awarding custody to a nonparent." In reJohnson (Mar. 29, 1995), 4th Dist. No. 94 CA 2003.
 {¶ 15} The Supreme Court of Ohio has never applied the "parental unsuitability" requirement of Perales to legal custody matters where the children have previously been adjudicated abused, dependent, or neglected pursuant to R.C. Chapter 2151. In re D.R. at ¶ 12. "[O]nce a child has been adjudicated dependent, as defined in R.C. 2151.04, the trial court's dispositional orders are primarily concerned with the best interests of the child[,]" as compared to the suitability of the parents. Id., citingIn re Cunningham (1979), 59 Ohio St.2d 100, 103, 106. Furthermore, a juvenile court's adjudication of dependency necessarily entails a finding of parental unsuitability. In re D.R. at ¶ 15; In re Johnson, supra.
 {¶ 16} Accordingly, as the facts of this case reflect that the legal custody issue did not involve presumptively fit parents and nonparents, and the children had previously been adjudicated dependent, we find that these facts do not mirror those of Perales. Consequently, the juvenile court was not required to make a finding of parental unsuitability before granting legal custody of the children to relatives. In re D.R. at ¶ 11, citing In re Farrow, supra; In reMcQuitty, supra; In re Johnson, supra. Therefore, Mother's second assignment of error is overruled.
 III. {¶ 17} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
Slaby, P.J. and Baird, J. concur.
[1] F.W. was placed into the custody of a maternal uncle; C.W. and T.W. were placed into the custody of a maternal cousin; and R.W. was placed into the custody of a paternal aunt and uncle.
[2] P.S. is the father of C.W., T.W., and R.W.
[3] T.S. is the father of F.W.
[4] We recognize that Mother raises this assignment of error with respect to the non-appealing fathers. However, she has failed to identify any legal basis to justify her argument on behalf of the non-appealing fathers. Nevertheless, we find this error does not impact the disposition of the assignment of error, and we need not address it any further.