OPINION
{¶ 1} Appellant Jeffrey Allen Colvin appeals the decision of the Court of Common Pleas, Juvenile Division, Richland County, which granted legal custody of his daughter, Keciol, to Tom and Rebecca Flynn, who had been maintaining foster placement. Appellee herein is the Richland County Children Services Board ("RCCSB"). The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant and Susan Sellers are the parents of Deangelo,[1] Isahea, and Keciol Sellers. RCCSB first intervened in the Sellers family in 1990. Since then, the three Sellers children have been in and out of the temporary custody of RCCSB on no less than four occasions. Susan has a history of substance abuse problems. Also of recent concern was appellant's conviction for drug trafficking, for which he was sentenced to two terms of eight months each, to be served consecutively.
 {¶ 3} On May 9, 2002, RCCSB filed separate complaints seeking dependency findings as to the three children. The complaints alleged that Susan Sellers' whereabouts were unknown, and that appellant was unable to care for the children due to his domestic violence history, drug abuse issues, and pending criminal charges. The trial court thereupon issued an ex parte order granting temporary custody to RCCSB, pending a further hearing.
 {¶ 4} On July 3, 2002, the trial court issued a judgment entry finding the three children dependent and maintaining temporary custody with RCCSB. On September 6, 2002, RCCSB filed motions for permanent custody of all three children, alleging that neither parent had made progress on their case plans. Shortly thereafter, the court granted the motion of Tom and Rebecca Flynn to intervene. The Flynns also filed a motion for legal custody of Keciol, then age eleven. All motions were heard in a two-day hearing on January 2, 2003 and February 28, 2003. Karen Youngblood, appellant's sister, appeared pro se and argued in favor of custody of all three children being granted to her. Susan Sellers did not appear. Appellant, RCCSB, and the Flynns were present and represented by counsel.
 {¶ 5} The magistrate issued her decision on March 5, 2003, recommending a denial of permanent custody to RCCSB, but granting legal custody of Deangelo and Isahea to Karen Youngblood, and legal custody of Keciol to the Flynns.
 {¶ 6} Appellant (via counsel) filed an objection to the magistrate's decision on March 12, 2003. Appellant also filed a pro se objection on March 20, 2003. Karen Youngblood filed her own pro se objection as well. However, on September 30, 2003, the trial court issued a judgment entry overruling all objections and affirming the magistrate's decision. Appellant timely appealed and herein raises the following sole Assignment of Error:
 {¶ 7} "I. The trial court erred in granting legal Custody of Keciol Sellers to tom and Rebecca Flynn, instead of to Karen Youngblood.
 I. {¶ 8} In his sole Assignment of Error, appellant contends the trial court erred in its grant of custody regarding Keciol. We disagree.
 {¶ 9} R.C. 2151.412(F) reads as follows:
 {¶ 10} "The court, on its own motion or the motion of the agency or person with legal custody of the child, the child's guardian ad litem, or any other party to the action, may conduct a hearing with notice to all parties to determine whether any order issued pursuant to this section should be modified or terminated or whether any other dispositional order set forth in divisions (A)(1) to (5) of this section should be issued. After the hearing and consideration of all the evidence presented, the court, in accordance with the best interest of the child, may modify or terminate any order issued pursuant to this section or issue any dispositional order set forth in divisions (A)(1) to (5) of this section. In rendering a decision under this division, the court shall comply with section 2151.42 of the Revised Code."
 {¶ 11} A trial court must apply the "best interest" standard when determining custodial issues. R.C. 2151.414(D). See, also,In re D.R. (2003), 153 Ohio App.3d 156, 792 N.E.2d 203. The abuse of discretion standard is applicable to determinations in custody proceedings. Miller v. Miller (1988), 37 Ohio St.3d 71,523 N.E.2d 846. The term "abuse of discretion" implies the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
 {¶ 12} We note that appellant and his sister Karen both sought custody of the Sellers children. Although appellant's own parenting capabilities were obviously much of the focus of the case, we will concentrate herein on the evidence pertaining to Karen and the Flynns, based on the wording of the Assignment of Error.[2]
 {¶ 13} During the evidentiary hearing, Karen Smith, M.S.W., who has approximately thirty years of experience in the child counseling arena, testified that Keciol has a bond to the Flynns, but not with Karen. Meanwhile, Smith noted that Deangelo and Isahea, custody of whom Karen did obtain, were going to require a great deal of parenting effort. Smith testified that Keciol wanted to stay with the Flynns, and that the child would lose a number of "connectors" if she were removed from them. She essentially concluded that trying to keep siblings together in this situation was outweighed by Keciol's need for stability.
 {¶ 14} Caseworker Stewart Seibel similarly noted the development of a "mother-daughter" relationship with Rebecca Flynn. Seibel described Keciol as being "very, very clearly entrenched" in the Flynn home. Tr. I at 98. Keciol had also had indicated to him that she had no desire to return to her father.
 {¶ 15} Appellant conceded in his testimony that he voluntarily placed Keciol with the Flynns during a previous period when he was incarcerated (1995-1997), and that he has at other times allowed weekend contact and other means of fostering a relationship between Keciol and the Flynns. On the other hand, he described his sister Karen as "real good with the kids." Tr. II at 53.
 {¶ 16} Rebecca Flynn also testified as to her desire to maintain custody of Keciol. Rebecca first brought Keciol into the Flynn household for a period of foster parenting at the behest of RCCSB in 1991, and has maintained frequent contact with the child since that time. During those periods when Keciol was placed with the Flynns, Rebecca permitted correspondence and other contact between the girl and appellant, and the overall relationships have generally remained amiable between all concerned.
 {¶ 17} Certainly, there were other witnesses, such as Danny Gannon, LPC, of the Family Life Center, who testified less in favor of maintaining Keciol's custody apart from her brothers, and likewise Karen presented herself as a hard-working and committed aunt who genuinely wanted to parent all three siblings. However, these factors must be balanced with the totality of the remaining evidence, and the fact that the magistrate duly conducted an in camera interview with Keciol prior to making this difficult decision between the two concerned households.
 {¶ 18} Appellant adds a subargument that the court should have replaced the guardian ad litem during the proceedings.[3] This contention is based almost entirely on the following accusatory comments made by appellant at the beginning of the evidentiary hearing, as noted in the following exchange:
 {¶ 19} "THE COURT: All right. You also filed a motion to appoint new guardian ad litem in this case.
 {¶ 20} "APPELLANT: Yes.
 {¶ 21} "THE COURT: And where do you stand on that today?
 {¶ 22} "APPELLANT: Still the same.
 {¶ 23} "THE COURT: And what's your basis for that?
 {¶ 24} "APPELLANT: Well she has been talking and giving Miss Flynn legal advice throughout this proceeding. Also she has told the kids if they have any type of contact with me, she is going to file another motion so she has not been (inaudible) she has been giving her all type of legal advice.
 {¶ 25} "THE COURT: All right, I'm going to deny that motion. Oh I should ask, Mr. Jacobs anything you want to comment on that?
 {¶ 26} "ATTORNEY JACOBS: No my client had indicated just as he stated here, the basis for his motion." Tr. I at 10.
 {¶ 27} In light of the entire record in this matter, we find no prejudicial error resulting from the denial of appellant's request for a new guardian ad litem.
 {¶ 28} Upon review, we are unpersuaded that the court erred or abused its discretion in adopting the magistrate's decision that legal custody of Keciol to the Flynn family would be in the child's best interest. Accordingly, appellant's sole Assignment of Error is overruled.
 {¶ 29} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Juvenile Division, Richland County, Ohio, is hereby affirmed.
Wise, J., Hoffman, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Richland County, Ohio, is affirmed.
Costs to appellant.
[1] Appellant was named as "legal custodian" of Deangelo in the complaint, rather than as the child's father.
[2] We further note that Karen, without filing a notice of appeal, filed her own "brief in support" on February 12, 2004, raising separate assignments of error. We find said brief improper under the Ohio Rules of Appellate Procedure. It will not be addressed in the within appeal.
[3] As this argument goes to a separate issue, we believe it would have been the better practice for appellant to have assigned a second error. See App.R. 16(A)(7).