OPINION *Page 2 
{¶ 1} Appellant Kathy Burnette appeals from the June 4, 2007 decision of the Licking County Court of Common Pleas, Juvenile Division which granted legal custody of her three-year old daughter to the child's foster parents, Appellees Darlene and Mark Hemmingsens.
 {¶ 2} In 2000, the trial court had previously granted permanent custody of Appellant's first born daughter to the Licking County Department of Job and Family Services ("the Agency") due to appellant's significant history of mental illness and inability to properly supervise, care and support her daughter.
 {¶ 3} Appellant became pregnant with another daughter. The child was born on May 24, 2004. The Agency immediately removed the child and placed her with a foster family ("the Hemmingsens"). The Agency also filed an ex parte request for temporary custody based upon appellant's mental health and the Agency's removal of appellant's first born child. The goal of the case plan was adoption, or in the alternative, reunification.
 {¶ 4} The Hemmingsens were foster-to-adopt parents with the Agency.
 {¶ 5} At the adjudicatory hearing held on August 19, 2004, the Magistrate determined that the child was dependent and placed her in the temporary custody of the Agency. The child remained in foster care with the Hemmingsens. Later, the Agency amended the case plan to reflect reunification as the goal. Initially, the Agency intended to reunify the child with her birth father, Clyde Kessinger.
 {¶ 6} Appellant began supervised visitation with the child in June 2004. *Page 3 
 {¶ 7} On April 25, 2005, the Agency filed a motion for extension of temporary custody. The Agency cited appellant's progress in the case plan and noted that the goal at this point was to reunify the child with appellant.
 {¶ 8} In June, 2005 Appellant, the Hemmingsens, and Clyde Kessinger filed motions for legal custody. On June 23, 2005, the trial court granted the Agency's motion to extend temporary custody pending the trial court's rulings on the custody motions. The State and the Agency opposed the foster parents' motion for legal custody.
 {¶ 9} The trial court heard the matter on December 2, 2005, January 23, 2006, March 17, 2006 and March 20, 2006. At the hearings, appellant, the State, the Hemmingsens, Mr. Kessinger and the Guardian Ad Litem introduced extensive evidence.
 {¶ 10} Ms. Houck, the Agency's assigned caseworker, testified regarding appellant's health. Specifically, she stated that appellant was in remission and controlling her mental illness, specifically major depression and bipolar disorder, with medication and counseling. T. at 75. Appellant uses community resources to assist with food and rent. T. at 65, 1054.
 {¶ 11} Mr. Kessinger testified that he believes the child would have a better life with the Hemmingsens. T. at 743.
 {¶ 12} There was testimony that the Hemmingsens sabotaged visitation with appellant. Mrs. Hemmingson sent the child's medication and there was not enough for the length of the visit with appellant. T. at 199-200. Further, the Hemmingsens sent the child's clothes to a lab after her visit with appellant. T. at 566. The Hemmingsens hired *Page 4 
a private investigator to investigate appellant and build a case contrary to the Agency's reunification plan. Mr. Hemmingsen visited appellant's house and took photos of dog feces in appellant's backyard in January 2006 prior to hearing. T. at 567.
 {¶ 13} Ms. Houck testified that the goal of the Agency is reunification. T. at 1085. She believes that a reunification of the child with appellant "would be successful for the near foreseeable future." T. at 1074.
 {¶ 14} On June 30, 2006, the Magistrate issued a decision awarding legal custody to the Hemmingsens. Further, the Magistrate awarded appellant visitation on alternate weekends and awarded supervised visitation to Mr. Kessinger.
 {¶ 15} Appellant filed objections to the Magistrate's decision. The Hemmingsens' also filed objections, specifically, they argued appellant should not be granted visitation unless "agreed to by the foster parents."
 {¶ 16} The trial court adopted the Magistrate's decision on June 4, 2007.
 {¶ 17} Appellant filed the instant appeal. Appellees have not appealed the trial court's decision in regards to the granting of visitation rights to Appellant.
 {¶ 18} Appellant raises a single Assignment of Error:
 {¶ 19} "I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DETERMINING THAT IT WAS IN THE CHILD'S BEST INTEREST TO BE PLACED INTO THE LEGAL CUSTODY OF THE FOSTER PARENTS, AS SUCH A DETERMINATION WAS AGAINST THE WEIGHT OF THE EVIDENCE PRESENTED."
 {¶ 20} In her sole assignment of error, appellant argues that the evidence did not support a finding that it was in the best interest of the child to be placed in the legal custody of the Hemmingsens. We disagree. *Page 5 
 {¶ 21} We recognize that the right to parent one's children is a fundamental right. Troxel v. Granville (2000), 530 U.S. 57, 66, 120 S.Ct. 2054; In re Hayes (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680. "However, government has broad authority to intervene to protect children from abuse and neglect." In re C.F., 113 Ohio St.3d. 73, 78,2007-Ohio-1104 at ¶ 28, 862 N.E.2d 816.
 {¶ 22} Revised Code 2151.353(A)(3) states in relevant part: "If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 23} "(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody that contains at least the following provisions:
 {¶ 24} "(a) That it is the intent of the person to become the legal custodian of the child and the person is able to assume legal responsibility for the care and supervision of the child;
 {¶ 25} "(b) That the person understands that legal custody of the child in question is intended to be permanent in nature and that the person will be responsible as the custodian for the child until the child reaches the age of majority. Responsibility as custodian for the child shall continue beyond the age of majority if, at the time the child *Page 6 
reaches the age of majority, the child is pursuing a diploma granted by the board of education or other governing authority, successful completion of the curriculum of any high school, successful completion of an individualized education program developed for the student by any high school, or an age and schooling certificate. Responsibility beyond the age of majority shall terminate when the child ceases to continuously pursue such an education, completes such an education, or is excused from such an education under standards adopted by the state board of education, whichever occurs first.
 {¶ 26} "(c) That the parents of the child have residual parental rights, privileges, and responsibilities, including, but not limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support;
 {¶ 27} "(d) That the person understands that the person must be present in court for the dispositional hearing in order to affirm the person's intention to become legal custodian, to affirm that the person understands the effect of the custodianship before the court, and to answer any questions that the court or any parties to the case may have."
 {¶ 28} In this type of dispositional hearing, the focus must be the best interest of the child. In re. C.R., 108 Ohio St. 3d 369,2006-Ohio-1191, 843 N.E.2d 1188; In re Nawrocki, Stark App. No. 2004-CA-0028, 2004-Ohio-4208; In re D.R., 153 Ohio App.3d 156,2003-Ohio-2852, 792 N.E.2d 203. The Supreme Court of Ohio made it clearIn re C.R. that once a child has been adjudicated dependent it is no longer necessary to find the parent unsuitable since this is already a determination at the dependency hearing. In re C.R. at ¶ 10-12. *Page 7 
 {¶ 29} Revised Code 2151.414(D) provides factors to be considered in making a best interest of the child determination. "In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 30} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 31} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 32} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 33} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 34} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 35} A trial court's determination on legal custody should not be overruled absent a showing of an abuse of discretion. In re Unger, Coshocton App. No. 04CA6, 2005-Ohio-2414. An abuse of discretion is when the trial court's judgment is *Page 8 
unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 36} The evidence adduced at hearing demonstrates the child interacts well with both the appellant and foster parents. It is clear that appellant and her live-in boyfriend, Mr. Lightle, love the child. T. at 63, 205, 952. It is equally clear there is a loving bond between the child and the Hemmingsens. T. at 580. Further, the child is bonded to her foster brother. T. at 527.
 {¶ 37} The child is too young to express her wishes as to where and with whom she wants to reside.
 {¶ 38} It is undisputed that the child has been with the Hemmingsens since the day after she was born. The Hemmingsens provide a home which is more than adequate. T. 524-527. Appellant has had successful visitation. According to Ms. Houck, appellant has surpassed the requirements of the case plan. T. at 198. In fact, appellant has sought out services and resources on her own initiative. T. at 61. Appellant has attended parenting classes and uses the Agency and Moundbuilders as appropriate support. T. at 62, 113. Appellant has learned how to handle stress in an appropriate manner. T. at 314. Appellant's mental illness is currently in remission due to medication and counseling. T. at 75. Appellant's home is adequate. T. at 933. Undeniably, the Hemmingsens have the socio-economic feasibility to provide a better home to the child.
 {¶ 39} A concern was expressed that the Hemmingsens will not allow visitation with appellant or barring that will negatively impact the relationship between appellant and the child. Ms. Houck testified that she has concerns that the Hemmingsens would *Page 9 
put the child at risk to facilitate custody. T. at 368. The Hemmingsens have exhibited sabotaging behaviors in the Agency's efforts at reunification with appellant. T. at 267, 351, 366. Mr. Hemmingson stated: "I feel that we should be the only ones to have custody." T. at 577.
 {¶ 40} There are concerns with appellant's ability to provide permanency. Appellant has mental health issues and this provides a level of unpredictability. Appellant and the Agency seem willing to continue to work together and provide vigilance. The Hemmingsens would provide stability and permanency.
 {¶ 41} The trial court has reserved jurisdiction to review visitation. The trial court may properly award reasonable visitation rights to a parent when it is in the best interest of a minor child. In reWhaley (1993), 86 Ohio App.3d 304, 317, 620 N.E.2d 954.
 {¶ 42} The Magistrate's decision was thoughtful and considered all the relevant factors and supporting testimony. The Magistrate sums up the situation adequately in the Judgment Entry:
 {¶ 43} "This is one of the most unusual cases this Magistrate has ever heard. The alignment of the parties is unprecedented. The father, the Guardian ad Litem, and the foster parents are opposed by the mother and the Agency. The Magistrate sees no ideal resolution of this case."
 {¶ 44} Based on the foregoing, we find the trial court did not abuse its discretion in determining that it is in the best interest of the child to grant legal custody to the Hemmingsens and reasonable visitation privileges to appellant to protect her residual parental rights.
 {¶ 45} Appellant's assignment of error is overruled. *Page 10 
 {¶ 46} The judgment of the Licking County Court of Common Pleas, Juvenile Division is affirmed.
Delaney, J. Edwards, J. concurs.
Farmer, P.J. dissents.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 11