[Cite as *In re J.B.*, 2011-Ohio-4611.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: J.B.

C.A. Nos.   25792
            25760

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 09-09-0806

DECISION AND JOURNAL ENTRY

Dated: September 14, 2011

CARR, Presiding Judge.

{¶1}    Appellant, Stacy B. ("Mother"), appeals a judgment of the Summit County Court of Common Pleas, Juvenile Division, that overruled her objections to a magistrate's decision and placed her minor child in the legal custody of the child's father, William C. ("Father"). This Court affirms.

I.

{¶2}    Mother and Father are the natural parents of J.B., born March 24, 2007. This is the third case involving a juvenile court removal of J.B. from his parents' custody due to their substance abuse and/or mental health problems   J.B. was first removed from Mother's custody following his birth because he was born experiencing symptoms of withdrawal from opiates. That case was eventually closed at the end of 2007, with the juvenile court granting both parents shared custody of J.B.

{¶3}    During January 2008, J.B. was again removed from his parents' custody because Father drove with him while he was intoxicated, shortly after he had threatened to commit suicide.  That case was closed three months later with Mother receiving custody of J.B.

{¶4}    This case began at the end of September 2009.  J.B. was removed from Mother's custody because he ingested an unknown quantity of Mother's prescription medication, apparently due to Mother's failure to store the medication out of the child's reach.  Summit County Children Services Board ("CSB") was concerned about the circumstances surrounding the incident, including that Mother allowed J.B. to take a nap after realizing that he had swallowed the medication and waited several hours to take him to the hospital.  At the hospital, Mother behaved erratically and was uncooperative with CSB and the hospital staff in their attempts to treat J.B. and investigate the incident.  Because CSB suspected that Mother was under the influence of drugs at that time, a social worker asked her to take a drug test, but Mother did not comply with that request for almost one week.

{¶5}    The reunification goals in this case again focused on Mother and Father addressing their ongoing mental health and substance abuse problems.  Mother eventually moved the trial court for legal custody of J.B.  Shortly afterward, CSB moved for a change of disposition, asking the trial court to place J.B. in the legal custody of Father.

{¶6}    Following a hearing on the competing motions for legal custody, the magistrate recommended that J.B. be placed in the legal custody of Father.  The trial court adopted the magistrate's recommendation and entered judgment accordingly.  Mother filed objections to the magistrate's decision, which the trial court overruled.  The trial court again ordered that J.B. be placed in the legal custody of Father.  Mother appeals and raises two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

"THE TRIAL COURT'S JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS UNSUPPORTED BY THE EVIDENCE."

**{¶7}** Mother's first assignment of error is that the trial court erred by placing J.B. in the legal custody of Father rather than in her legal custody. Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child. See *In re D.R.,* 153 Ohio App.3d 156, 2003-Ohio-2852, at ¶17. "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision on the best interest of the child." *In re N.P.,* 9th Dist. No. 21707, 2004-Ohio-110, at ¶23, citing *In re Fulton,* 12th Dist. No. CA2002-09-236, 2003-Ohio-5984, at ¶11. The juvenile court's disposition of legal custody to a relative is a less drastic disposition than permanent custody to a children services agency because it does not terminate parental rights but instead "leaves intact 'residual parental rights, privileges, and responsibilities.'" *In re Shepherd* (Mar. 26, 2001), 4th Dist. No. 00CA12, quoting R.C. 2151.011(B)(19). The trial court's decision to grant or deny a motion for legal custody is within its sound discretion and will not be reversed absent an abuse of discretion. *In re M.S.,* 9th Dist. No. 22158, 2005-Ohio-10, at ¶11.

**{¶8}** Without explaining why she would be the better legal custodian for J.B., Mother points to isolated facts from the record in an attempt to paint a negative picture of Father. Specifically, she focuses on Father's history of substance abuse and mental health problems, while ignoring her own problems that led to the removal of J.B. from her custody. The evidence adduced at the hearing supported the trial court's conclusion that Father had made significant

progress addressing his problems and was in a better position than Mother to provide a stable home for J.B.

{¶9} Although Father had a history of drug abuse, his more recent substance of choice had been alcohol, not drugs. The trial court heard testimony from Father, his substance abuse counselor, his Alcoholics Anonymous ("AA") sponsor, and another AA group member who had become friendly with Father through AA meetings. These witnesses explained how Father had been able to control his addiction to alcohol. At the time of the hearing, the evidence indicated that Father had remained sober for over a year. He had completed court-ordered alcohol counseling many months before the hearing, but was continuing in counseling on a voluntary basis to help him remain sober while addressing the stressors in his life. His counselor described Father as being in the remission stage of alcohol addiction and opined that his risk of relapse was low.

{¶10} Father's AA sponsor and his friend from the AA meetings verified that Father attended AA meetings on a regular basis and was actively involved in the AA program. His sponsor testified that Father was "quite a mess" when he met him over a year earlier, but that he had been working the 12-step program and had achieved stability in his life. The sponsor indicated that Father was doing well and, as far as he could determine, had not relapsed in the past 14 months. The caseworker further testified that all of Father's alcohol screens had been negative and that CSB was encouraged that he had a plan in place for relapse prevention.

{¶11} There was also ample evidence that Father had achieved stability with his mental illness. Father has bipolar disorder and requires medication and counseling to stabilize his mood swings. He had been seeing the same counselor for approximately 18 months, who testified that Father was doing so well that she had scaled back his counseling sessions to once a month.

Based on her interactions with him, she believed that Father was managing his mood well, was compliant with his psychiatric medications, and was refraining from alcohol. The counselor further testified that Father had only infrequent mood cycles that were not extreme and did not interfere with his daily functioning. The caseworker testified that Father demonstrated insight into his need for ongoing medication and treatment. She believed that Father was motivated to continue with treatment after this case closed.

{¶12} Throughout this case, Father visited J.B. without supervision, which included overnight visits at his home. The caseworker observed visits between J.B. and Father and explained that there was a loving bond between the two and that she had no concerns about Father's ability to care for J.B. Father had transported J.B. to some of his visits with Mother and was willing to continue to do so. He admitted that his relationship with Mother was "strained," but agreed to facilitate visits between Mother and J.B. because he knew that their relationship was important.

{¶13} Father had been moving forward with his life by attending college and was employed through the work-study program. He testified that he could enroll J.B. in daycare at the university. Father lived with his parents, who had ample room in their home for J.B. and were willing to allow Father and J.B. to live there and to provide them ongoing family support.

{¶14} On the other hand, although Mother had made progress on the goals of the case plan, the evidence demonstrated that she had not achieved the level of stability that was necessary to provide a stable home for J.B. Mother also has bipolar disorder and requires medication and counseling to stabilize her symptoms. According to Mother, she was diagnosed over a decade ago and has received treatment ever since. Mother's counselor described her mental health stability as "okay for now." At the time of the hearing, she was still seeing her

counselor weekly and would need to continue weekly counseling because she was not progressing forward with her life. Mother had recently switched psychiatrists and had also changed many of her medications, so it was unclear exactly what psychiatric medications she was taking or how the medication change would potentially impact her mental health. Mother testified that she continued to feel very stressed and suffered physical ailments as a result. She had been hospitalized so frequently during recent months that she could not remember the number of hospitalizations or the reasons for each visit. She was able to explain that she had been hospitalized due to migraines, vomiting, convulsions from her medications, infections, and pneumonia.

{¶15} Mother was participating in a substance abuse counseling program, but CSB was concerned that Mother's counselor was not qualified to address her long-term poly-substance abuse because the counselor had no specialized training and was not a licensed professional. Moreover, although Mother testified that she attended counseling sessions weekly, no one from her treatment program offered testimony or documentation to verify her attendance or report on her progress in the program. She also testified that she attended AA and had a sponsor, but this testimony was likewise uncorroborated.

{¶16} Mother's visits with J.B. had remained supervised throughout this case. The CSB caseworker expressed concern that Mother continued to lack insight into the reason that J.B. came into CSB custody. Mother had not admitted that she made a serious mistake by failing to keep her medication out of J.B.'s reach. It was apparent from her testimony that she did not accept responsibility for J.B. ingesting her prescription medication, as she testified at length about how J.B. was able to open a child-proof bottle and that she had not realized he was able to do so until she found him with her open medication bottle. Her testimony stressed how smart her

young child was, without any recognition that she had been careless by leaving the bottle where he had access to it.

{¶17} Given the evidence presented at the legal custody hearing, the trial court reasonably concluded that legal custody to Father was in J.B.'s best interest. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

"THE TRIAL COURT ABUSED ITS DISCRETION IN NOT PERMITTING THE MATERNAL GRANDMOTHER TO TESTIFY."

{¶18} Mother next challenges the trial court's refusal to allow the maternal grandmother to testify at the legal custody hearing. She concedes that she did not comply with Summit County Juvenile Court Local Rule 7.02(B)(3) because she failed to include the maternal grandmother in her pretrial statement as a potential witness. She maintains, nonetheless, that the trial court abused its discretion by refusing to allow the grandmother to testify.

{¶19} Mother attempted to call the maternal grandmother as a witness after the caseworker testified that Mother had inappropriately told J.B. that he would be coming home soon. Because the grandmother supervised Mother's visits with J.B., Mother believed that the grandmother's testimony would rebut or explain the caseworker's testimony on that issue. Because Mother had not listed the grandmother as a witness on her pretrial statement, the magistrate decided that grandmother could not testify as part of Mother's case in chief. The magistrate further stated that he would revisit the issue after Father's witnesses testified to determine whether rebuttal testimony from the grandmother would be appropriate. As the trial court emphasized in overruling Mother's objection, however, Mother never attempted to call the grandmother as a rebuttal witness. The trial court further explained that, given all of the testimony presented at the hearing weighing in favor of legal custody to Father, the

grandmother's testimony would not have affected the outcome in this case. Mother has failed to demonstrate that the trial court erred in overruling her objection to the magistrate's decision not to allow the grandmother's testimony. The second assignment of error is overruled.

III.

**{¶20}** Mother's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
MOORE, J.
<u>CONCUR</u>

<u>APPEARANCES:</u>

THOMAS C. LOEPP, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.