OPINION
{¶ 1} Appellant Michelle Unger, appeals from several judgments entered in the Coshocton County Court of Common Pleas, Juvenile Court Division. Appellant's case originates from two related juvenile dependency actions involving Appellant's biological children, Eric and Kailee: In re: Kailee Unger, Coshocton Common Pleas Court Juvenile Division, Case Number 20130001; and, In re: Eric Unger, Coshocton Common Pleas Court Juvenile Division, Case Number 20115068. Both neglect cases were originally filed under the single case number 20115068 but became bifurcated into two separate case numbers when the trial court granted permanent custody of Kailee to the Coshocton County Department of Job and Family Services hereinafter "JFS").
 {¶ 2} Although the Appellant has been granted leave to file three amended notices of appeal, essentially the two trial court orders from which Appellant seeks review are the trial court's grant of Kailee's permanent custody to JFS and a subsequent temporary order terminating Appellant's visitation with Eric.
 {¶ 3} This appeal is expedited, and is being considered pursuant to App.R.11.2(C). This Court has extended the time requirements of App.R.2(C) for good cause.
 STATEMENT OF THE FACTS AND CASE {¶ 4} The relevant facts leading to this appeal are as follows:
 {¶ 5} Appellant, Michelle Unger is the natural mother of Eric Unger, whose date of birth is July 26, 1991, and Kailee Unger, whose date of birth is September 26, 2000.
 {¶ 6} Appellee, Jerry Berry is the natural father of Eric Unger.
 {¶ 7} The natural father of Kailee Unger is Randy Allen.
 {¶ 8} On September 18, 2004, in trial court case number 15068, JFS filed a complaint alleging that Eric Unger and Kailee Unger were dependent and neglected children pursuant to R.C. 2151.03(A)(2) and2151.04(A) and requested an order for protective supervision.
 {¶ 9} The facts which gave rise to the filing of the Complaint included as follows: Appellee, JFS, received an initial neglect referral; JFS stated that there were ongoing concerns that Appellant was under the influence of vicadin; was leaving her children unattended; and the home environment was deplorable. JFS intervened and developed a safety plan which gave Appellant approximately ten (10) days to clean her home. After the ten (10) day period elapsed Appellant's home environment had only changed minimally at which time JFS sought the intervention and assistance of the trial court by way of a request for protective supervision.
 {¶ 10} On September 25, 2001, after the shelter care hearing, the children were ordered to remain in Appellant's custody and were further ordered to be placed under the protective supervision of JFS.
 {¶ 11} On November 1, 2001, JFS filed a case plan. The case plan required Appellant to obtain and maintain a clean home; complete a psychological evaluation; participate in any recommended counseling; refrain from abusing prescription medications; and maintain the personal hygiene of her family.
 {¶ 12} On November 15, 2001, Appellant stipulated to a finding of dependency. On November 19, 2001, upon a motion by JFS the complaint for neglect was dismissed and the children were found to be dependent. As a part of the disposition the trial court made specific orders for the cleaning and renovation of Appellant's home.
 {¶ 13} On November 30, 2001, after finding that the home environment had not improved, the trial court granted emergency custody of the children to JFS. The trial court also approved and adopted the case plan filed by JFS on November 1, 2001.
 {¶ 14} On December 19, 2001, after a dispositional hearing the trial court ordered both children to remain in the temporary custody of JFS. The trial court granted Appellant supervised visitation and amended the case plan to require Appellant to successfully complete parenting classes.
 {¶ 15} Throughout the pendency of the action Appellants case plan was modified several times. The modifications included changes in the methods for monitoring Appellant's housekeeping progress, her progress in achieving mental health goals, and her interaction with her children. Throughout the case, Appellant's mental health plan included continued mental health therapy with Six Counties, Inc.
 {¶ 16} On June 7, 2002, after a review hearing, Eric was placed in the temporary legal custody of his father, Appellee, Jerry Berry and Kailee was continued in the temporary legal custody of JFS.
 {¶ 17} On September 9, 2002, due to behavioral problems at home and school, Eric was ordered to complete individual counseling with, Gary Wolfgang.
 {¶ 18} On January 10, 2003, the trial court ordered that Appellant be permitted to gradually increase visitation with both children to periods of unsupervised visitation. However, due to growing concerns over mother's behavior during visits, in March of 2003, mother's visitation was reduced to weekly supervised visits with both children.
 {¶ 19} On July 16, 2003, JFS filed a motion requesting permanent custody of Kailee.
 {¶ 20} On September 14, 2003, the trial court held a permanent surrender hearing for Kailee's father, Randy Allen. Notice of the hearing was sent to Mr. Allen on August 21, 2003. No notice of hearing was sent to Appellant. Mr. Allen, an adult, appeared at the hearing accompanied by his parents. At the hearing, on the record, the trial court, informed Mr. Allen that by entering a stipulation to permanent custody he would effectively waive his right to a permanent custody hearing and his parental rights to Kailee would be terminated. After being duly informed of the consequences, Mr. Allen executed a permanent surrender form and entered a stipulation to permanent custody on the record. On September 16, 2003, by judgment entry, Mr. Allen's request for permanent surrender was granted.
 {¶ 21} On November 5, 2003, and November 6, 2003, the trial court conducted a permanent custody hearing on behalf of Kailee. Appellant appeared represented by counsel.
 {¶ 22} On November 16, 2003, Appellant moved for a supplemental hearing to the permanent surrender by Randy Allen. Appellant objected to the trial court's acceptance of the permanent surrender and argued that she had not been properly served with notice of the hearing and/or provided an opportunity to appear either personally or on her own behalf.
 {¶ 23} On December 8, 2003, by agreement of the parties, Eric was placed in the custody of his father Appellee, Jerry Berry. The parties further agreed to continue Appellant's supervised visitation with Eric for two hours each week on the condition that Appellant comply with her case plan objectives, specifically, mental health counseling.
 {¶ 24} On December 19, 2003, the trial court held an annual review hearing which included an evidentiary hearing on Appellant's motion for a "supplemental hearing" on Randy Allen's surrender of permanent custody. At the hearing, Appellant presented the direct testimony of Randy Allen. Mr. Allen testified regarding his permanent surrender of parental rights to Kailee. He stated that he agreed to the permanent surrender in order to avoid a child support obligation and did not wish to reconsider the decision.
 {¶ 25} On January 21, 2004, Appellee Jerry Berry, upon the advice of counselor, Gary Wolfgang, filed a motion to terminate Appellant's visitation with Eric.
 {¶ 26} On January 27, 2004, Appellant filed an objection to the application of 2151.414(B)(1)(d) for permanent custody on constitutional grounds.
 {¶ 27} On January 30, 3004, by judgment entry the trial court granted permanent custody of Kailee to JFS.
 {¶ 28} On February 18, 2004, the court heard evidence with regards to Appellee, Jerry Berry's motion to terminate Appellant's visitation with Eric. The evidence included the testimony of Eric's counselor, Gary Wolfgang. Thereafter, by judgment entry, filed February 23, 2004, the trial court temporarily terminated Appellant's visitation "until further order of the court." The trial court further ordered the parties to submit proposed Findings of Fact and Conclusions of Law. Proposed Findings of Fact and Conclusions of Law were jointly submitted by the State and Jerry Berry. Appellant did not file Proposed Findings of Fact and Conclusions of Law.
 ASSIGNMENTS OF ERROR {¶ 29} I. The trial court erred an abused its discretion in terminating michelle unger's parental rights to kailee.
 {¶ 30} II. The trial court erred in relying on r.c. 2151.414(B)(1)(d) as it is unconstitutional.
 {¶ 31} III. The trial court erred in terminating michelle unger's visitation with eric.
 {¶ 32} IV. The trial court deprived michelle unger of her right to a fair hearing by accepting randy allen's surrender of parental rights at a hearing without notice to michelle or her Counsel
 {¶ 33} V. The trial court erred in failing to allow appellant's counsel to make closing argument at the february 18, 2004, hearing.
 {¶ 34} VI. The trial court erred in relying on the testimony of gary wolfgang when he was not qualified as an expert, and had no scientific basis for his recommendation to stop eric's visits with his mother.
 {¶ 35} VII. The trial court lacked subject matter jurisdiction to issue its supplemental orders."
 I. {¶ 36} In the First Assignment of Error Appellant contends that the trial court's decision to grant permanent custody was against the manifest weight of the evidence. We disagree.
 {¶ 37} R.C. 2151.353(A)(5) requires the court to make certain findings on the basis of clear and convincing evidence. Clear and convincing evidence is that evidence which produce(s) in the mind of the trier of facts a firm belief or conviction as to the facts to be established.
 {¶ 38} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, Unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 39} Ohio Revised Code Section 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. That statute provides as follows:
 {¶ 40} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 41} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 42} "(b) The child is abandoned.
 {¶ 43} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 44} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 45} The trial court found that the minor child could not be placed with either parent at this time or within a reasonable period of time and that the children had been in the temporary custody of SCDJFS for 12 of the past consecutive 22 months. These are alternate findings pursuant to R.C. 2151.414(B)(1). R.C. 2151.414(B)(1)(a) and (d) respectively. Either of those findings, if supported by the evidence, is sufficient as a basis to grant of permanent custody pursuant to R.C. 2151.414(B)(1).
 {¶ 46} Appellant does not challenge the trial court's finding that the minor child was in the temporary custody of the agency for 12 of the past 22 months. Such a finding is enough to satisfy the requirements of R.C.2151.414(B)(1). See In Re: Whipple Children, Stark App. No. 2002CA00406, 2003-Ohio-1101. Nor did Appellant challenge the Agency's assertion that the minor child had been in the temporary custody of the Agency for at least 12 months out of 22 months when given an opportunity to do so at the permanent custody hearing. Thus, a review of the record supports the trial court's finding.
 {¶ 47} The trial court found further that the grant of permanent custody was in the minor child's best interest. Appellant contends that the trial court's decision is against the manifest weight of the evidence. We disagree.
 {¶ 48} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:
 {¶ 49} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 50} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 51} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 52} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 53} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 54} At the permanent custody hearing, the state presented evidence through the testimony of several witnesses including: Appellant's counselor, Peggy Roth; a case aid for JFS, Tina Woodby; the ongoing caseworker for JFS, Jodi Hunt; Kailee's foster parent, Judy Haines; and, the case supervisor for JFS, Karen Maloy. The parties also stipulated to the introduction of Appellant's criminal record of conviction for telephone harassment and took judicial notice of the trial court record. The trial court also accepted for review the report of the guardian ad litem provided on October 24, 2003. After the close of the state's case, Appellant testified on her own behalf and presented the testimony of her friend, Pam Pulley.
 {¶ 55} Kailee's ongoing caseworker Jodi Hunt testified that she was assigned to Kailee's case in September of 2001. Ms. Hunt states that on November 29, 2001, Kailee was removed from Appellant's home and placed in the home of foster parents, Chuck and Judy Harris. The removal was due to neglect, an unsanitary home environment and Appellant's mental health concerns. Ms. Hunt stated that the unsanitary home environment included the home being filled with debris, trash, animal feces, roaches and gnats. Ms. Hunt testified that Appellant had moved from the home which had been of concern and had since engaged in a transient lifestyle living with friends. Ms. Hunt stated that Appellant's sporadic employment history included short term jobs and her participation in her mental health plan was sporadic and her goals remained "unmet". Furthermore, Ms. Hunt stated that in March of 2003, Appellant called her and threatened to kill her if the children were not returned home which resulted in Appellant's criminal conviction and sentence for telephone harassment. Ms. Hunt testified that Appellant's visits with Kailee were generally good but that she appeared to be overwhelmed by two children and that Kailee became distressed both during and after visits occurred. Ms. Hunt testified that she did not believe that anything else could be done to facilitate returning Kailee and Eric to Appellant. She stated that unfortunately, Appellant's mental health problems interfered with her ability to provide adequate care for Kailee. Ms. Hunt further testified that she believed it was in Kailee's best interest to be in the permanent custody of JFS in order to provide her with a "complete structured life."
 {¶ 56} Judy Harris testified that she has been Kailee's foster parent since November of 2001. In June of 2002, Kailee was put into the relative placement of a maternal aunt and uncle but was subsequently returned to foster care with the Harris's in December of 2002. She stated that Kailee has remained in court placement outside Appellant's home since her initial removal. Ms. Harris testified that at the time of her removal Kailee, (fourteen (14) months of age), was malnourished, non-responsive, had broken hair, bloody diapers, and a raw buttocks. Ms. Harris testified that at the time of the hearing Kailee, (now three years of age), was a "happy, healthy little girl" with a healthy weight of 37 pounds, verbally age appropriate, and able to recite her ABC's, her colors, and count to twenty. She testified that after visits with Appellant, Kailee would suffer from incontinence at home and at daycare. Ms. Harris further stated that Kailee has a very strong bond to them as her foster parents, that removal would be devastating, and that they were interested in the adoption of Kailee.
 {¶ 57} The trial court took judicial notice of a psychological evaluation by Dr. Jackson published in 2002, which indicated that Appellant appeared to meet the criteria for Antisocial Personality Disorder. Dr. Jackson's opinion stated that Appellant's profile also included, an anger based egocentricity and extreme tendency to project blame for her difficulties on others which in turn contributes to judgment errors and a personality profile which is relatively resistant to change.
 {¶ 58} Both Karen Maloy and Peggy Roth addressed Appellant's mental health issues and her progress with case plan goals. Karen Maloy testified that Appellant's case plan was modified to allow her to concentrate on her mental health plan. However, Appellant continued to manipulate others, engage in lying, and reported suicide ideations. Peggy Roth testified that Appellant did not address the fact that her behaviors were the root of her ongoing involvement with JFS and criminal activity. Ms. Roth testified that she had not participated in counseling since her release from incarceration and that Appellant's individual counseling goals had not been met.
 {¶ 59} As a whole, the evidence presented indicated that the interaction between Appellant and Kailee was traumatic; Kailee is strongly bonded to her foster parents; Appellant was not mentally capable of rectifying the problems which led to Kailee's temporary custody with JFS; and, that Kailee's need for a legally secure permanent placement with a safe stable home environment could not be achieved without a grant of permanent custody to JFS. For these reasons, we find that the trial court's finding that the best interest of the child would will be served by granting permanent custody to JFS was not against the manifest weight of the evidence.
 {¶ 60} We further find that the trial court had clear and convincing evidence before it to grant the JFS permanent custody of the child.
 {¶ 61} Appellant's First Assignment of error is overruled.
 II {¶ 62} In Appellant's Second Assignment of Error, Appellant challenges the constitutionality of R.C. 2151.414(B)(1)(d).
 {¶ 63} "The [permanent custody] statutes appropriately reflect the need to balance the extraordinarily significant rights and interests: parents' rights and interest in the custody, care, nurturing, and rearing of their own children, and the state's parens patriae interest in providing for the security and welfare of children under its jurisdiction * * *." In re Thompson (April 26, 2001), Franklin App. Nos. 00AP-1358, 00AP-1359. Clearly, "* * * by enacting R.C. 2151.414(B)(1)(d), the legislature intends that the mere amount of time in which a child is in the continuous care of a public or private children services agency is sufficient to terminate a parent's right to raise her child and to award permanent custody to the requesting agency." In re Miqueal M, 6th Dist. No. L-02-1020, 2002-Ohio-3417, ¶ 17.
 {¶ 64} When examining legislative enactments, we must afford a strong presumption of constitutionality. Cincinnati v. Langan (1994),94 Ohio App.3d 22, 640 N.E.2d 200.
 {¶ 65} Several appellate districts in Ohio have addressed the constitutionality of the "12 of 22" rule in 2151.414(B)(1)(d).
 {¶ 66} For example, the Fourth District Court of Appeals aptly noted that "[p]rior to instituting a permanent custody proceeding under R.C.2151.414(B)(1)(d), the parent has twelve months to demonstrate that the parent is able, suitable, or fit to care for the child," and concluded that the statute was constitutional. See, also, In re Stillman (2003),155 Ohio App.3d 333, 2003-Ohio-6228; In re Brooks, Franklin App. Nos. 04AP-164, 04AP-202, 04AP-165, 04AP-201, 2004-Ohio-3887; In re Gomer,
Wyandot App. No. 16-03-19, 2004-Ohio-1723. This Court, in In re:Villaneuva/Hampton Children, Stark App. No. 2004CA00120, 2004-Ohio-4609, likewise concluded that 2151.414(B)(1)(d) is constitutional.
 {¶ 67} In this case, Appellant has failed rebut the presumption of constitutionality regarding R.C. 2151.414(B)(1)(d). Appellant's Second Assignment of Error is therefore overruled.
 III. {¶ 68} Appellant claims in her Third Assignment of Error that the trial court abused its discretion in terminating her visitation with Eric. We disagree.
 {¶ 69} R.C. 2151.353 governs the disposition of an abused, neglected, or dependent child. Subsection (A) states the following:
 {¶ 70} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 71} "(1) Place the child in protective supervision;
 {¶ 72} "(2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home or in any other home approved by the court;
 {¶ 73} "(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child;
 {¶ 74} "(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414
of the Revised Code that the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding.
 {¶ 75} "(5) Place the child in a planned permanent living arrangement with a public children services agency or private child placing agency, if a public children services agency or private child placing agency requests the court to place the child in a planned permanent living arrangement and if the court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child and that one of the following exists:
 {¶ 76} "(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care.
 {¶ 77} "(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414
of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.
 {¶ 78} "(c) The child is sixteen years of age or older, has been counseled on the permanent placement options available to the child, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing the child for independent living.
 {¶ 79} "(6) Order the removal from the child's home until further order of the court of the person who committed abuse as described in section 2151.031 of the Revised Code against the child, who caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, or who is the parent, guardian, or custodian of a child who is adjudicated a dependent child and order any person not to have contact with the child or the child's siblings."
 {¶ 80} Ordinarily, a comprehensive reunification plan must include "regular and frequent visitation and communication or other contact between the parents and child." R.C. 2151.412(B)(1)(b)(i). The juvenile court has the discretion to deny visitation in exceptional cases. In reJones (Dec. 16, 1985), Cuyahoga App. No. 49766, unreported; In re Espy
(July 22, 1982), Cuyahoga App. Nos. 44202-44204, unreported.
 {¶ 81} A decision to terminate visitation will not be reversed absent an abuse of discretion. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore, supra. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. Blakemore v. Blakemore,supra.
 {¶ 82} In this case, Appellant did not contest the fact that Eric was found to be dependent. On December 8, 2003, Appellant agreed to place Eric in his father, Jerry Berry's, custody. Prior to the visitation termination hearing, Appellant was granted supervised visits for two hours each week.
 {¶ 83} At the visitation termination hearing Eric's JFS caseworker, Jodi Hunt testified that during visits Eric was often anxious. She further stated that subsequent to the visits Eric had problems with excessive urination and behavioral problems at school. Ms. Hunt stated that when the visits were suspended during Appellant's incarceration these problems subsided. However, once visits were reinstated the problems reoccurred.
 {¶ 84} Gary Wolfgang, Eric's licensed clinical counselor over a two year period, testified that during counseling sessions Eric verbalized compelling reasons for terminating visitation. Eric's reasons included as follows: He was concerned that the Appellant would abduct him; He didn't like Appellant's constant complaining; He viewed Appellant as a dishonest person who cheats others; He believes Appellant manipulates others for monetary gain; He feels she's "weird", "psycho" and "crazy"; He believes Appellant lies about the way she is feeling and "acts phony"; He stated Appellant ignored him during visits; He had bad memories of Appellant's male friends; He observed Appellant engaged in the use of illegal substances; He observed Appellant engage in sexual activity; He was aware that Appellant engaged in drug sales; and, Appellant repeatedly attempted to alienate him from his father.
 {¶ 85} Gary Wolfgang stated that when contact with Appellant was suspended, Eric's problematic behaviors subsided. Based upon Eric's concerns and the observation during the time period when visitation was suspended, Mr. Wolfgang recommended that it would be in Eric's best interest to temporarily terminate Appellant's visits.
 {¶ 86} Eric's guardian ad litem concurred with the Mr. Wolfgang's recommendation.
 {¶ 87} Given the trauma caused by the visitation, Eric's compelling concerns, and the recommendation of Eric's counselor and guardian ad litem, we find that the trial court did not err in terminating visitation.
 {¶ 88} Appellant's Third Assignment of Error is therefore overruled.
 IV. {¶ 89} Appellant argues in her Fourth Assignment of Error that the trial court violated her constitutional due process rights by accepting a permanent surrender of custody of Kailee by her father, Randy Allen, without providing Appellant with notice and an opportunity to be present. We disagree.
 {¶ 90} Pursuant to R.C. 5103.15, a permanent surrender may be set aside, where such surrender is induced by fraud or misrepresentationKozak v. Lutheran Children's Aid Society, 164 Ohio St. 335 (1955); In reMiller, 61 Ohio St. 2d 184 (1980).
 {¶ 91} The purpose of a permanent surrender hearing is to ensure that the parent who is permanently surrendering their parental rights is voluntarily and knowingly engaging in the decision. The presence of a non-surrendering parent has no effect upon the other parent's decision. The record before us is more than sufficient to justify the lower court's finding that Kailee's father was aware of the consequences when he executed the permanent surrender agreement and verbally agreed to the surrender on the record.
 {¶ 92} Furthermore, in a subsequent "supplemental" hearing prior to the trial court's grant of permanent custody, Kailee's father was placed under oath on direct examination by Appellants counsel and asked if he wished to reconsider his decision. Kailee's father testified that he did not wish to reconsider his decision and wanted his decision for permanent surrender to remain in effect in the permanent custody case.
 {¶ 93} Appellant's Fourth Assignment of Error is hereby overruled.
 V. {¶ 94} In her Fifth Assignment of Error, Appellant argues that the trial court abused its discretion in failing to permit Appellant's counsel to make closing remarks in the hearing for the termination of Appellants visitation with Eric. We disagree.
 {¶ 95} A review of the record shows that Appellant's counsel stated to the trial court, "I would like to make a few closing remarks" to which the trial court responded, "Go ahead." Transcript of August 11, 2004 hearing for termination of visitation at page 60. Counsel proceeded to discuss a telephone conversation with Gary Wolfgang which the trial court ruled inappropriate witness testimony which could only be introduced if counsel withdrew and presented himself as a witness for Appellant. Counsel declined to withdraw and proceeded to make closing remarks and a closing rebuttal. Furthermore, Appellant's counsel was asked to submit proposed findings of act and conclusions of law. Appellant's counsel did not submit the requested findings of fact and conclusions of law.
 {¶ 96} Appellant's Fifth Assignment of Error is therefore overruled.
 VI. {¶ 97} Appellant argues in her Sixth Assignment of Error that the trial court abused its discretion in permitting counselor, Gary Wolfgang to give an opinion regarding the termination of visits between Appellant and Eric. We disagree.
 {¶ 98} The admission or exclusion of evidence rests in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343; Blakemore v. Blakemore, supra. Relevant evidence is generally admissible and is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.
 {¶ 99} Lay opinion testimony is admissible if it satisfies both requirements of Evid.R. 701. In re Jenkins (June 28, 2001), 10th Dist. No. 00AP-1411; Skeen v. Gullett (June 23, 1994), 10th Dist. No. 93APF12-1633. Evid.R. 701 provides that: [i]f a witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.
 {¶ 100} An expert may give an opinion if the expert qualifies under Evid.R. 702:
 {¶ 101} (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 102} (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 103} (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *
 {¶ 104} In this case, Mr. Wolfgang's testified that he was a clinical counselor who had been working with Eric and his family for approximately two years. Mr. Wolfgang's opinions on direct examination by Appellant's counsel and cross-examination by the state, were based upon his own observations and reports. We find said opinions qualified under Evid.R. 701 and Evid.R. 704.
 {¶ 105} Furthermore, in this case, Mr. Wolfgang was called as a witness by Appellant. Although we find that the trial court did not err in considering Mr. Wolfgang's opinion, it is well accepted law a party is not permitted to complain of an error which said party invited or induced the trial court to make. State v. Kollar (1915), 93 Ohio St. 89,112 N.E. 196.
 {¶ 106} Appellant's Sixth Assignment of Error is therefore overruled.
 VII. {¶ 107} In her Seventh Assignment of Error Appellant argues that the trial court lacked subject matter jurisdiction to proceed with interim orders regarding Eric's visitation with Appellant since a Notice of Appeal had been filed in this Court. We disagree.
 {¶ 108} R.C. 2151.417(A) and (B) and R.C. 2151.353(E)(1) provide the trial court with continuing jurisdiction over dispositional issues regarding children under the juvenile court's jurisdiction. Eric's ongoing dependency action provided the trial court with subject matter jurisdiction as well as the authority to make ongoing decisions regarding his care.
 {¶ 109} Appellant's Seventh Assignment of Error is therefore overruled.
 {¶ 110} In conclusion, for the foregoing reasons, we find that the trial court's award of permanent custody of Kailee to JFS was not against the manifest weight of the evidence and the trial court did not abuse it's discretion in temporarily terminating visitation between Appellant and her son, Eric.
 {¶ 111} The judgment of the Coshocton County Court of Common Pleas, Juvenile Court Division, is affirmed.
Boggins, P.J. Gwin, J., and Hoffman, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Coshocton County, Ohio, is affirmed.