[Cite as *In re T.W.*, 2016-Ohio-92.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

IN RE: T.W.

C.A. No. 27477

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. DN 12-02-000092

DECISION AND JOURNAL ENTRY

Dated: January 13, 2016

CARR, Judge.

{¶1} Appellant, Tanzy S. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her minor child in the legal custody of her maternal great-aunt ("Aunt"). This Court affirms.

I.

{¶2} Mother is the natural mother of four minor children. Mother's first three children were born while she was a minor, have always resided with their maternal grandparents, and are not at issue in this appeal. The only child who is a party to this appeal is Mother's youngest child, T.W., born February 27, 2008. T.W.'s father ("Father") participated in the trial court proceedings but is not a party to this appeal.

{¶3} When this case began, Mother and Father had been involved in a live-in relationship for several years and Mother had often been the victim of domestic violence perpetrated by Father. Several times over the years, Mother had left the home and stayed with

Aunt to get away from Father. During one of those periods, Mother and T.W. returned to the home to retrieve some clothing and unexpectedly encountered Father. When they did not return to her home, Aunt called the police because she feared that Father was holding them hostage. Although Mother would later deny that Father threatened to harm them, she did not cooperate with the police when they responded to the scene. Specifically, Mother refused to disclose the whereabouts of Father, who was later discovered to be inside the home with T.W. Consequently, a SWAT unit was dispatched to the home and a standoff ensued until Father was caught leaving the home through a window. Both parents were taken into custody for obstructing the police investigation. Father was also charged with violating a protection order against Mother and for outstanding arrest warrants for prior crimes. Then three-year-old T.W., who had been inside the home throughout the incident, was removed from the custody of his parents pursuant to Juv.R. 6.

{¶4} CSB filed a complaint the next day, February 1, 2012, alleging that T.W. was abused, neglected, and dependent, based on the long history of physical and emotional abuse perpetrated by Father against Mother, which had included a harassment conviction and a civil protection order that Father had violated numerous times. Facts alleged about the violence included that Father struck Mother with a board, caused physical harm to her, poured gasoline on her, and locked her in the trunk of a car. CSB had also learned that Father was a sexual predator, based on a 1987 conviction for gross sexual imposition against a minor, but he had never received sex offender treatment and had been incarcerated numerous times over the years for failing to register, failing to comply with civil protection and other court orders, and for committing additional crimes.

{¶5} Both parents later stipulated to the facts in the complaint and to an adjudication of T.W. as an abused and dependent child. They further agreed to the trial court's adoption of the

case plan and dispositional order that placed T.W. in the temporary custody of Aunt. During the next year, Mother made some progress on the case plan, but insisted on continuing her live-in relationship with Father. Aside from obtaining a psychological evaluation, Father refused to comply with any of the reunification goals of the case plan.

{¶6} CSB and the guardian ad litem each moved the trial court to place T.W. in the legal custody of Aunt. Following a hearing on the motion as well as the parents' requests for a six-month extension of temporary custody, the magistrate decided that T.W. should be placed in the legal custody of Aunt.

{¶7} Mother and Father filed objections to the magistrate's decision. The trial court overruled their objections and placed T.W. in the legal custody of Aunt. Mother appeals and raises eight assignments of error, which will be consolidated and rearranged for ease of review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING LEGAL CUSTODY OF THE MINOR CHILD TO HER RELATIVE WHEN [CSB] DID NOT USE REASONABLE CASE PLANNING AND DILIGENT EFFORTS FOR REUNIFICATION WITH THE MOTHER AND THE CASEWORKER HAD A DISTINCT CONFLICT OF INTEREST IN THIS CASE.

{¶8} Mother's first assignment of error is that CSB failed to exert reasonable efforts to reunify Mother and T.W. because the original caseworker prevented her from maintaining a relationship with T.W. Although the original caseworker assisted Aunt in obtaining a protection order after Mother threatened to assault Aunt during a meeting with the caseworker, she also assisted Mother in making arrangements for another relative to supervise her visits with T.W. at another location. Mother did not deny that she had threatened to harm Aunt but testified that she hoped to mend her problems with Aunt in the future.

{¶9} Throughout these proceedings, neither parent challenged the reasonableness of CSB's reunification efforts. On May 17, 2013, several months before the legal custody hearing, Father filed a motion to remove the caseworker because she was too "invested" in the case. On May 29, CSB responded that it would appoint a new caseworker to this case. The new caseworker began working with the family in June and worked with them for the remainder of the case.

{¶10} Moreover, the record reveals that CSB provided the parents with reasonable reunification services. CSB referred both parents to appropriate service providers and, when Mother told the caseworker that she could no longer afford counseling because she had lost her job, the caseworker referred Mother to low-cost counseling service providers, but Mother did not follow through with those alternate providers. Instead, she stopped counseling altogether. As will be explained in more detail under Mother's five consolidated assignments of error, the record reflects that failure of reunification efforts between Mother and T.W. resulted from the refusal of Mother and Father to work on the goals of the case plan, not a lack of reunification efforts by the agency. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED MOTHER'S RIGHTS WHEN TESTIMONY WAS PERMITTED OVER MOTHER'S OBJECTIONS.

{¶11} Mother's sixth assignment of error is that the trial court erred in allowing the testimony of the child's counselor because Mother's counsel was not prepared to cross-examine the witness. Specifically, the parents received numerous pages of new counseling records on the first day of the hearing. Although Mother later raised this issue through her objections to the magistrate's decision, she raised no objection at the time the counselor testified, nor did she

request a continuance of the hearing, so she forfeited all but plain error. *See In re A.O.-R.*, 9th Dist Summit No. 27261, 2015-Ohio-1802, ¶ 5, citing *In re E.A.,* 9th Dist. Wayne No. 14AP0044, 2015-Ohio-806, ¶ 40.

**{¶12}** At the hearing, Mother's trial counsel asked that she be given time to review the new records before the witness testified. The magistrate granted counsel an opportunity to review the new records and no objection was raised to the admission of the records or the counselor's testimony. Because Mother has failed to argue or demonstrate that the admission of the counselor's testimony rose to the level of plain error, her sixth assignment of error is overruled. *In re G.M.*, 9th Dist. Wayne Nos. 14AP0040, 14AP0041, 2015-Ohio-582, ¶ 27.

**ASSIGNMENT OF ERROR VII**

THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING EXPERT TESTIMONY WHEN [THE] WITNESS WAS NOT QUALIFIED AS AN EXPERT.

**{¶13}** Mother's seventh assignment of error is that the trial court erred in allowing the testimony of the psychologist who performed the psychological evaluation of Father because the witness was not qualified by specialized knowledge, skill, or training to testify as an expert in her field. This is another issue that Mother raised through her objections to the magistrate's decision but did not raise through a timely objection at the hearing, so she has forfeited all but plain error. *See In re A.O.-R.*, 2015-Ohio-1802, ¶ 5. Mother's brief argument does not demonstrate that the trial court committed plain error in allowing this witness to testify as an expert.

**{¶14}** At the hearing, none of the parties questioned the qualification of this witness to testify as an expert. Instead, the sole objection to her testimony was that the parents had not been given adequate notice that that witness would be testifying as an expert at the hearing. That challenge was apparently resolved off the record because the issue was raised immediately

before the court went to a recess and no further discussion or objection appears on the record when the court reconvened and the witness testified. The record reveals that, although not identified in the initial pretrial statement, the parties were given sufficient notice through an amended pretrial statement that this witness would testify as an expert. Mother's seventh assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING LEGAL CUSTODY OF THE MINOR CHILD TO HER RELATIVE BECAUSE IT IS NOT IN THE BEST INTEREST OF THE CHILD.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN GRANTING LEGAL CUSTODY OF THE MINOR CHILD TO HER RELATIVE, AS THIS DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN GRANTING LEGAL CUSTODY OF THE MINOR CHILD TO HER RELATIVE AS MOTHER HAD SUBSTANTIALLY COMPLETED HER CASE PLAN.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED IN GRANTING LEGAL CUSTODY OF THE MINOR CHILD TO HER RELATIVE BECAUSE THE REASON THIS CASE WAS BROUGHT BEFORE THE COURT HAS BEEN RESOLVED.

## ASSIGNMENT OF ERROR VIII

THE TRIAL COURT VIOLATED MOTHER'S FUNDAMENTAL RIGHTS TO RAISE HER CHILD WHEN [IT] GRANTED LEGAL CUSTODY TO A RELATIVE.

{¶15} Mother's second, third, fourth, fifth, and eighth assignments of error will be addressed together because they all pertain to the merits of the trial court's legal custody decision. Essentially, Mother asserts that the evidence before the trial court failed to support the trial court's decision to place the child with Aunt because Mother had worked on the case plan to

resolve the problems that caused the child's removal from the home. Mother suggests that, because she is T.W.'s mother, the trial court was required to explicitly find her unfit before it could place the child in the custody of a nonparent. The Ohio Supreme Court rejected that argument in *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, paragraphs two and three of the syllabus, reasoning that an adjudication of abuse, neglect or dependency constitutes a determination of parental unsuitability.

{¶16} Consequently, following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child. *See In re D.R.*, 153 Ohio App.3d 156, 2003-Ohio-2852, ¶ 17 (9th Dist.). "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11. The trial court's decision to grant or deny a motion for legal custody is within its sound discretion and will not be reversed absent an abuse of discretion. *In re M.S.*, 9th Dist. Summit No. 22158, 2005-Ohio-10, ¶ 11.

{¶17} Although Mother's compliance with the case plan may have been relevant to T.W.'s best interest, it was not dispositive. *See, e.g.*, *In re K.C.*, 9th Dist. Summit Nos. 26992, 26993, 2014-Ohio-372, ¶ 22; *In re B.G.,* 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 21. The primary focus at the legal custody hearing was on the current parenting ability of the potential custodians (Aunt or Mother and Father) and whether it was in the best interest of T.W. to be permanently placed in the legal custody of any of them. *In re K.C.*, 2014-Ohio-372, at ¶ 20.

{¶18} Moreover, the record reveals that Mother had not substantially complied with the reunification requirements of the case plan. The case plan required Mother to become involved in T.W.'s mental health treatment and to obtain a parenting evaluation and follow any treatment recommendations. Mother obtained a psychological evaluation and was diagnosed with dependent personality disorder. The evaluation further explained that Mother exercised poor judgment by becoming involved in a long-term "abusive and dysfunctional relationship" with Father, that she relied on him to make most of her decisions, and was defensive of his aggressive behaviors. The evaluator recommended that Mother complete individual counseling to "help reduce her emotional dependence" on Father and to "improve her decision-making, judgment, and coping skills." Mother made minimal progress through counseling because she did not attend sessions on a consistent basis. Mother had gained little insight into the reason that T.W. was removed from her care, the trauma that she and T.W. had experienced in the home, and Mother continued to deny that Father posed a threat to her or her child.

{¶19} Although Father has not appealed from the trial court's judgment, because he and Mother planned to continue living together, his case plan compliance was incorporated into her reunification requirements on the case plan. The case plan also required Father to obtain a psychological evaluation and follow all treatment recommendations. Father obtained a psychological assessment and was diagnosed with antisocial personality disorder and paraphilia. He refused, however, to engage in any of the treatment that was recommended by the evaluator. Father insisted that he did not need counseling or sex offender education because he had done nothing wrong and did not believe that he posed a threat to T.W.

{¶20} Throughout this case, Father refused to admit that he had committed any acts of violence against Mother. Although Mother had obtained a civil protection order against Father,

and admitted that she had repeatedly called the police and moved out of the home to stay with Aunt, she refused to admit that domestic violence posed an obstacle to her reunification with T.W. The caseworker had suggested that Mother end her relationship with Father if she wanted to be reunited with T.W., but Mother and Father insisted on remaining together. Mother testified that Father was a good father, had never harmed T.W., and that she did not believe that he posed a threat to the child.

{¶21} Father also has a lengthy criminal history, including convictions of domestic violence, telephone harassment, burglary, marijuana trafficking, and a 1987 conviction of gross sexual imposition against a minor, for which he was later designated as a sexual predator. On multiple occasions, Father failed to register and verify his address as required by his sex offender designation, and was incarcerated for a total of seventeen years for those violations. Although he entered a guilty plea to the sexual offense and had been repeatedly incarcerated because of it, Father continued to deny that he had done anything wrong. During his psychological evaluation, Father told the evaluator that he did not commit the offense but that a woman had falsely accused him of molesting her daughter.

{¶22} Moreover, neither parent accepted any responsibility for the incident that led to T.W.'s removal from the home, nor did they understand the significance of the trauma that T.W. experienced while living with them. T.W.'s counselor testified that, by the age of three years old, the child had experienced so many traumas in her life that she suffered from post-traumatic stress disorder. The counselor explained that T.W.'s anxiety seemed to be triggered by people fighting, loud noises, and her fear of being left alone. T.W.'s mental health issues had resulted in numerous behavioral problems, which were beginning to subside through ongoing therapy. The counselor explained that Mother and Father met with her only once and denied that T.W. had

experienced any trauma while living in their home. The counselor expressed concern that the parents lacked any insight into T.W.'s symptoms and tended to minimize their significance.

{¶23} In Aunt's home, on the other hand, T.W. was receiving proper care and felt safe and secure. By the time of the hearing, T.W. had been living with Aunt for eighteen months. During that time, Aunt had participated in T.W.'s counseling. The counselor, who held her sessions with T.W. at Aunt's home, testified that Aunt had been actively involved in T.W.'s therapy and that she understood her diagnosis and responded to her symptoms in a proper manner. While living with Aunt, T.W. has made slow progress in overcoming her anxiety and accompanying behavioral problems. T.W. felt safe in Aunt's home and her counselor did not believe that a change in caregivers would be in the child's best interest.

{¶24} Other witnesses also testified that Aunt was providing T.W. with appropriate care in a safe and stable home. Although Aunt was still concerned about the threatening behavior of Mother and their strained relationship, she had been facilitating visitation between Mother and T.W. and testified that she would continue to do so. She further testified that she had a good relationship with the other relative who was then supervising the visits.

{¶25} Consequently, there was substantial evidence before the trial court to support its conclusion that legal custody to Aunt was in the best interest of T.W. Mother's second, third, fourth, fifth, and eighth assignments of error are overruled.

III.

{¶26} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR.

APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

LEONARD BRIEDING, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD KASAY, Assistant Prosecuting Attorney, for Appellee.

MADELINE LEPIDI-CARINO, Guardian ad Litem.