[Cite as *In re I.T.*, 2016-Ohio-4668.]

STATE OF OHIO      )                IN THE COURT OF APPEALS
                    )ss:         NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT   )

IN RE: I.T.                      C.A. No.     27826
      S.H.

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 2013-09-0609
                 DN 2013-09-0610

DECISION AND JOURNAL ENTRY

Dated: June 29, 2016

MOORE, Judge.

{¶1}   Appellant, Nicole L. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her two minor children in the legal custody of their respective fathers. This Court affirms.

I.

{¶2}   Mother is the biological mother of S.H., born May 23, 2002; and I.T., born December 28, 2006. On September 18, 2013, Mother's children were removed from her custody pursuant to Juv.R. 6 after police arrested Mother for producing methamphetamine in the family home. At that time, the fathers of the children resided elsewhere and were not alleged to be involved in any drug activity. The following day, Summit County Children Services Board ("CSB") filed complaints to allege that Mother's children were abused, neglected, and dependent based on allegations of ongoing drug use and methamphetamine production in the family home.

The children were immediately placed in the emergency temporary custody of their respective fathers.

{¶3} I.T. and S.H. were later adjudicated dependent and placed in the temporary custody of their fathers. Each father later moved for legal custody of his own child and CSB supported their motions. Mother opposed the motions and alternatively requested a six-month extension of temporary custody.

{¶4} Prior to the final hearing, upon motion of the children's guardian ad litem, the trial court appointed independent counsel to represent the children because they had expressed their desire to return to Mother's custody, which conflicted with the guardian's opinion about their best interests. Mother later moved the trial court to interview the children in camera before reaching its decision on the dispositional motions, but the trial court denied her request.

{¶5} Following a hearing before a magistrate on the alternative dispositional motions, the magistrate decided that S.H. should be placed in the legal custody of her father and that I.T. should be placed in the legal custody of his father. Mother filed objections to the magistrate's decision, raising the same issues that she now raises on appeal. The trial court overruled Mother's objections and placed the children in the legal custody of their respective fathers. Mother appeals and raises six assignments of error, which will be consolidated and rearranged to facilitate review.

II.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT VIOLATED MOTHER'S RIGHTS AND ABUSED ITS DISCRETION WHEN MOTHER'S MOTION FOR IN CAMERA TESTIMONY BY THE CHILDREN WAS DENIED.

{¶6}     Mother's third assignment of error is that the trial court committed reversible error by denying her motion for an in camera interview of the children.  Prior to the final hearing, Mother moved the trial court to conduct an in camera interview of each child "pursuant to R.C. 2151.414(D)(1)[,]" which requires the trial court to consider the wishes of the child "as expressed directly by the child or through the child's guardian ad litem[.]"    R.C. 2151.414(D)(1)(b).  "The trial court has discretion to accept the testimony of the guardian ad litem on the child's wishes rather than hearing a direct expression of those wishes made by the child."  *See In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 56.

{¶7}     During the hearing, the children's attorney, the guardian ad litem, CSB, and the fathers voiced opposition to Mother's request for in camera interviews of the children.  The children's attorney informed the court that she had discussed in camera interviews with the children and they told her that they did not want to be put in the position of telling the court where they wanted to live.  She explained that the children felt torn between Mother and their fathers and did not like being in the middle of their parents' conflict and became stressed about having to tell the court where they wanted to live.

{¶8}     The children's attorney emphasized that the children were represented by counsel and a guardian ad litem, both of whom could speak on their behalf.  The attorney also noted that, because Mother asked the court to conduct the in camera interviews after the hearing, the parents would have time to "inappropriately influence" the children.  This Court has held that a trial court does not abuse its discretion by denying a request for an in camera interview of children who had expressed fear and concern about informing the trial court about where they wanted to live.  *See In re S.V.*, 9th Dist. Summit No. 22116, 2004-Ohio-5445, ¶ 28.

{¶9} Moreover, Mother's request for in camera interviews was not solely focused on ascertaining the children's wishes pursuant to R.C. 2151.414(D)(1)(b). Instead, after Mother and both fathers had presented contradictory testimony about their behavior toward the children and each other, Mother's counsel argued that the children's testimony was necessary to resolve those conflicts in the evidence.

{¶10} The children's attorney countered that an in camera interview is not intended as a means to elicit testimony from the children about disputed facts of the case. The purpose of an in camera interview of a child in a custody case is to determine the child's wishes and "to protect the child from having to say negative things about either party or express a custodial or visitation preference in the presence of the parties." *In re Whitaker*, 36 Ohio St.3d 213, 218 (1988); *In Matter of Matis*, 9th Dist. Summit No. 16961, 1995 WL 314683, *4-5 (May 24, 1995). Because Mother has failed to demonstrate that the trial court abused its discretion in denying her request for in camera interviews of the children, her third assignment of error is overruled.

### ASSIGNMENT OF ERROR V

> THE TRIAL COURT ERRED IN GRANTING LEGAL CUSTODY OF MINOR CHILDREN TO EACH RESPECTIVE FATHER WHEN [CSB] DID NOT USE REASONABLE CASE PLANNING AND DILIGENT EFFORTS AT REUNIFICATION WITH MOTHER.

{¶11} Mother's fifth assignment of error is that the trial court erred in placing I.T. and S.H. in the legal custody of their fathers because CSB had failed to make reasonable efforts to return the children to her custody. Although Mother raised a reasonable efforts argument in her objections to the magistrate's decision, she did not timely raise this issue before the children were placed in the legal custody of their fathers.

{¶12} The children were temporarily placed with their fathers at the beginning of this case and, several months later, the fathers filed written motions for legal custody and CSB later

filed a motion to support each father's request. By the time the legal custody hearing commenced, the children had been outside Mother's custody and living with their fathers for nearly one year. Throughout that time, Mother never filed a written motion with the trial court, nor did she argue at the final hearing, that CSB had failed to make reasonable efforts to return the children to her custody.

{¶13} In fact, Mother's argument throughout the hearing was that she had substantially complied with the reunification requirements of the case plan. Although she and the caseworker disputed some of the facts pertaining to when and how Mother utilized services under the case plan, Mother's apparent trial strategy was she had complied with the all of the requirements of the case plan in a timely manner, not that CSB had failed to provide her with reunification services. Because Mother did not timely raise a reasonable efforts challenge in the trial court and does not argue plain error, this Court need not address this argument on appeal. *See, e.g, In re T.W.*, 9th Dist. Summit No. 27477, 2016-Ohio-92, ¶ 11-12. Mother's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING LEGAL CUSTODY OF THE MINOR CHILDREN TO THEIR RESPECTIVE FATHERS BECAUSE IT IS NOT IN THE BEST INTEREST OF THE CHILDREN.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED LEGAL CUSTODY OF THE MINOR CHILDREN TO THEIR BIOLOGICAL FATHERS AS MOTHER HAD SUBSTANTIALLY COMPLETED HER CASE PLAN.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING MOTHER'S MOTION FOR A SIX-MONTH EXTENSION.

**ASSIGNMENT OF ERROR VI**

THE TRIAL COURT ERRED IN GRANTING LEGAL CUSTODY OF THE MINOR CHILDREN TO THEIR RESPECTIVE FATHERS AS THIS DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶14}** Mother's remaining assignments of error will be consolidated because they are closely related. Mother argues that the trial court erred in placing her children in the legal custody of their fathers and that the court should have instead granted her request for a six-month extension of temporary custody. We review a juvenile court's award of legal custody for an abuse of discretion. *In re L.B-R.*, 9th Dist. No. 27201, 2015-Ohio-2622, ¶ 5. An abuse of discretion implies that a trial court was unreasonable, arbitrary, or unconscionable in its judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶15}** "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *See In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. The trial court must also conduct a best interest analysis to determine whether to extend temporary custody.[1] If legal custody was in the best interest of the children, the alternative disposition of extending temporary custody was not. *See In re I.A.*, 9th Dist. Summit No. 26642, 2013-Ohio-360, ¶ 10.

**{¶16}** "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision [regarding legal custody] on the

---

[1] Moreover, the trial court would have authority to extend temporary custody only if it also found that Mother had made significant progress on the case plan and that there was reasonable cause to believe that the children would be reunified with her or otherwise permanently placed during the extension period. R.C. 2151.415(D)(1).

best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11. In making this determination, "courts have looked to the best interest factors of R.C. 2151.414(D), R.C. 3109.04(F)(1), a combination of the two, or general notions of what should be considered regarding the best interests of the children." (Citations omitted.) *In re A.K.*, 9th Dist. Summit No. 26291, 2012-Ohio-4430, ¶ 25.

{¶17} When determining the child's best interests under R.C. 2151.414(D), the juvenile court must consider all "relevant" factors, including the interaction and interrelationships of the child, his wishes, the custodial history of the child, and his need for permanence in his life. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. Although the trial court is also required to consider any relevant factors under R.C. 2151.414(E)(7) through (11), none of those factors applied to the facts of this case. *See id*.

{¶18} Mother's interaction with her children during this case was limited to supervised in-person visitation and regular phone calls with the children. Mother's visitation continued to be supervised because she had not signed information releases with her service providers to enable the caseworker to monitor her progress in drug treatment. Moreover, the caseworker and the fathers testified that Mother often harshly criticized the fathers and said other inappropriate things to the children. Because of these concerns, the father of S.H. required her to speak to Mother on speakerphone so he could terminate a call if the conversation became inappropriate. The caseworker gave one disturbing example of Mother falsely telling S.H. that her uncle had died and then immediately ending her call with the child. S.H. became extremely upset and repeatedly tried to call Mother, but Mother did not answer her phone.

{¶19} Mother attempted to dispute the testimony of both fathers and the caseworker through cross-examination and her own testimony. Although she asserted that each father, the caseworker, and the guardian ad litem were all lying about her, the trial court apparently did not believe that testimony because it found that Mother was posing more obstacles to visitation than the fathers.

{¶20} No one disputed that Mother and the fathers did not get along, so CSB had arranged for visits to be supervised by a relative who was willing to continue doing so if the children remained with their fathers. CSB requested that Mother's visits continue to be supervised until she could demonstrate more appropriate behavior around the children. The fathers testified that they understood that it was important for the children to maintain a relationship with Mother and they were prepared to facilitate visitation.

{¶21} The caseworker testified that had she no concerns about the suitability of either father. She opined that I.T. and S.H. seemed to be happy and were thriving in the custody of their fathers. The children's interaction with their fathers and with each other was positive. The guardian ad litem testified that the siblings love each other. The children saw each other during their visits with Mother. There was also evidence that the fathers had arranged for the siblings to get together at other times and planned to continue sibling visits if the children were placed in their legal custody.

{¶22} The children's attorney and the guardian ad litem informed the court that the children wanted to remain in the home of his or her father and continue to visit Mother. The guardian ad litem testified that the children loved Mother but were more comfortable and felt safe in the home of his or her father. She further testified that the fathers were meeting the children's needs and recommended that the children remain with their fathers.

{¶23} Regarding the children's custodial history, Mother emphasized that the children had spent most of their lives living with her, and that the fathers had not been their primary caretakers or even had significant involvement in their lives prior to this case. Although evidence about each parent's prior relationship with the children was relevant to their best interests, Mother offered no evidence to demonstrate that she had overcome the problems that had caused her children to be removed from her custody and adjudicated as dependent children. The primary focus of the legal custody hearing was on the current parenting ability of each potential custodian and whether it was in the best interest of the children to be permanently placed in the legal custody of any of them. *See In re K.C.*, 9th Dist. Summit Nos. 26992, 26993, 2014-Ohio-372, ¶ 20.

{¶24} While the children were in Mother's custody prior to this case, they had been exposed to drug use and methamphetamine production in the family home and it is not apparent from the record how long they were exposed to those unsuitable conditions. At the hearing, rather than pointing to evidence that she had remedied the conditions that led to her criminal drug charges and the children's removal from her home, Mother attempted to discredit the ability of each father to care for the children.

{¶25} Although the fathers may have had a limited role in their children's lives prior to this case, after the children were removed from Mother's custody, each father immediately assumed an active parental role by taking emergency temporary custody of his own child. The children had remained in the custody of their respective fathers for one year and were doing well in their homes.

{¶26} Mother had completed some of the reunification requirements of the case plan but was not ready to provide the children with a stable home. Because legal custody to each father

would provide the children with legally secure permanent placements, the trial court reasonably concluded that the legal custody placements were in their best interests. Mother's first, second, fourth, and sixth assignments of error are overruled.

## III.

**{¶27}** Mother's six assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

CARR, P. J.
WHITMORE, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

JASON D. WALLACE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

ROBERT L. BENEDICT, Attorney at Law, for Appellee.

PHILLIP HERBAUGH, Attorney at Law, for Appellee.

LINDA BENNETT, Guardian ad Litem.

BETH BLACKMORE, Guardian ad Litem.