[Cite as *In re G.A.*, 2017-Ohio-8561.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: G.A.
     W.A.

C.A. Nos.    28664
                 28665

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 15-02-109
                DN 15-02-110

DECISION AND JOURNAL ENTRY

Dated: November 15, 2017

---

HENSAL, Presiding, Judge.

{¶1} Appellants, E.A. ("Mother) and J.J. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed two minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother is the biological mother of G.A., born May 24, 2013; and W.A., born September 2, 2014. Mother has other children who are not parties to this appeal. Father is the biological father of only W.A., but has always thought of G.A. as his own child because he began a relationship with Mother while she was pregnant with G.A. The father of G.A. has not been involved in the child's life and did not participate in these proceedings.

{¶3} Mother's parental rights to an older child were terminated in Cuyahoga County in 2013. That child was placed in the permanent custody of the agency because, among other reasons, Mother failed to consistently address her serious mental health and drug problems and repeatedly lost contact with the agency and her child.

{¶4} Just before this case began, Mother temporarily relocated to Summit County and was again struggling with drug problems. On February 20, 2015, Akron Police removed G.A. and W.A. from Mother's custody pursuant to Juv.R. 6. At that time, Mother was arrested and incarcerated on drug charges; the children were with a family that had an open case with CSB and was not permitted to take other children into their home; and CSB had been unable to find a relative to care for the children. The record includes contradictory facts about Father's whereabouts at that time, but it was not disputed that he lacked the ability to provide the children with a suitable home.

{¶5} CSB filed complaints, alleging that both children were dependent. The trial court later adjudicated them dependent and placed them in the temporary custody of CSB. By that time, Mother was no longer incarcerated but Father was. Father was convicted after an incident of domestic violence against Mother. Mother sustained numerous physical injuries, including black eyes, a broken wrist, and a wound behind her ear that required sutures. Because Father was sentenced to an 18-month term of incarceration, he remained incarcerated throughout most of this case.

{¶6} Shortly after this case began, Mother moved back to Cuyahoga County and later gave birth to two more children there. Cuyahoga County Department of Children and Family Services filed dependency cases and received temporary custody of those children. The case plan in Cuyahoga County was similar to the case plan in this case, and the caseworkers from the

two counties worked together to coordinate Mother's services and monitor her case plan progress.

{¶7} Although both caseworkers encouraged Mother to work on the reunification goals of the case plans, Mother repeatedly tested positive for drugs, never completed substance abuse treatment, refused to engage in any mental health treatment, did not obtain housing, and did not maintain consistent contact with CSB, her children, or the court. Moreover, Mother remained involved in a violent romantic relationship with another man.

{¶8} On August 9, 2016, CSB moved for permanent custody of G.A. and W.A. Two weeks later, Father was released from his term of incarceration and soon began weekly, supervised visitation with the children. Father later filed a motion for legal custody of the children and to continue the final dispositional hearing.

{¶9} The final hearing was held several months later over two days: March 31 and May 2, 2017. Between the two hearing dates, Father filed another dispositional motion, requesting that he and Mother receive shared parenting. On the second day of the hearing, counsel for the parents clarified to the trial court that Father and Mother were seeking joint legal custody of the children and that Father no longer sought sole legal custody.

{¶10} Following a hearing on the competing dispositional motions, the trial court found that the children had been in the temporary custody of CSB for more than 12 months of a consecutive 22-month period and that permanent custody was in their best interest. The parents separately appealed and their appeals were later consolidated. Each raises a single assignment of error, which will be addressed together for ease of review.

II.

## MOTHER'S ASSIGNMENT OF ERROR

THE COURT ERRED IN FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN AND DENYING THE PARENTS' MOTION FOR SHARED [LEGAL CUSTODY].

## FATHER'S ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED FATHER'S PARENTAL RIGHTS AS THE [JUDGMENT] WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} Both parents argue that the trial court's permanent custody decision was not supported by the evidence. Before a juvenile court may terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; they or another child in a parent's custody have been adjudicated abused, neglected, or dependent on three separate occasions; or they cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under Revised Code Section 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under Section 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶12} The trial court found that CSB had satisfied the first prong of the test because the children had been in the temporary custody of CSB for more than 12 months of a consecutive 22-month period. *See* R.C. 2151.414(B)(1)(d). Mother and Father do not dispute that finding

but confine their arguments to the trial court's determination that permanent custody was in the best interest of the children.

{¶13} When determining the children's best interest under Revised Code Section 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, their custodial history, and the need for permanence in their lives. *In re R.G.*, 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. Father's best interest argument focuses almost entirely on his compliance with the case plan. Although Father completed some classes and treatment while he was incarcerated, most of his case plan compliance occurred after CSB had moved for permanent custody. Moreover, evidence of case plan compliance may be relevant to the trial court's best interest determination, but is not dispositive. *In re J.J.*, 9th Dist. Summit No. 22236, 2004-Ohio-6538, ¶ 8.

{¶14} The first best interest factor is the "[t]he interaction and interrelationship of the child[ren] with [their] parents, siblings, relatives, foster caregivers and * * * any other person who may significantly affect the child[ren.]" R.C. 2151.414(D)(1)(a). This Court has emphasized that the first best interest factor is "'highly significant'" and "focuses on a critical component of the permanent custody test: whether there is a family relationship that should be preserved.'" *In re CM.*, 9th Dist. Summit No. 21372, 2003-Ohio-5040, ¶ 11, quoting *In re Smith*, 9th Dist. Summit No. 20711, 2002 Ohio App. LEXIS 2, *12 (Jan. 2, 2002). This best interest factor did not weigh in favor of Mother and Father maintaining their parental rights.

{¶15} For the past two years, Mother's interaction with the children had been limited to supervised visits because she never complied with the mental health, substance abuse, or parenting education components of the case plan. Mother continued to test positive for drugs and failed to maintain consistent contact with her children, CSB, the court, or her attorney.

Mother's Summit County caseworker also expressed concern that Mother had cognitive delays and had difficulty interacting with the children because she seemed to lack the ability to nurture them. Both caseworkers were also concerned that Mother continued to involve herself in violent relationships.

{¶16} Although witnesses agreed that Father's recent visits with the children had been appropriate and positive, Father had no interaction with these young children for 18 months while he was incarcerated. Since then, Father's interaction with the children had been limited to weekly, supervised visits that were never expanded because he did not complete the mental health component of the case plan. Moreover, Father's reunification goal was to jointly parent the children with Mother, who had not remedied any of the problems that brought the children into CSB custody. Father planned to leave the children in Mother's care while he worked, even though she did not appropriately supervise them and continued to regularly use drugs.

{¶17} The children had consistent and positive daily interaction with the foster family, however. They had been living together in the same foster home for nearly two years and the foster family was meeting all of their daily needs. Both children were closely bonded to each other and the foster family. The foster parents were interested in adopting G.A. and W.A. if CSB received permanent custody.

{¶18} At the time of the hearing, the children were only two and three years old, so the guardian ad litem spoke on their behalf. She opined that permanent custody was in their best interest because Mother and Father had not made much progress on the reunification goals of the case plan and the children had found a stable and potentially permanent home with the foster family.

{¶19} The children had remained in the temporary custody of CSB for most of their young lives and were in need of a legally secure permanent placement. CSB had been unable to find any relatives who were willing and able to provide them with a stable home. Although Father and Mother argue that they were prepared to provide the children with a suitable permanent home, the record demonstrates otherwise.

{¶20} On the first day of the hearing, both parents were homeless. By the second hearing date, Mother had acquired public housing. Father had not acquired housing and explained that his criminal record had been an obstacle. He testified that he would live with Mother, but the Cuyahoga County caseworker testified that Mother was not permitted to allow Father to live in her government-subsidized housing.

{¶21} Moreover, Mother had not even minimally complied with the mental health or substance abuse components of the case plan. Father testified that he would parent the children with Mother, even though she had not complied with the case plan requirements to remedy her long-standing parenting problems that had brought these two children and three other children into the custody of two children services agencies. Father believed that Mother had changed, despite her failure to engage in services.

{¶22} Moreover, Mother and Father had a history of domestic violence, including an incident that caused serious physical harm to Mother and sent Father to prison for 18 months. Mother had not complied with the case plan requirement that she remedy her problem of involving herself in abusive relationships, as she continued to do so.

{¶23} Father asserts that the trial court improperly considered that he had not engaged in domestic violence counseling because that was not a requirement of the case plan. The trial court did not suggest that Father had failed to comply with a requirement of the case plan but

simply made that observation when considering whether it would be in the children's best interest to be placed in the joint legal custody of both parents. The trial court was reasonably concerned that neither parent had developed the tools to break the cycle of violence in their relationship.

**{¶24}** Consequently, the evidence demonstrated that the parents were not prepared to provide the children with a legally secure permanent placement and CSB had been unable to find another relative who was willing and able to do so. The parents have failed to demonstrate that the trial court erred in concluding that permanent custody was in the best interest of G.A. and W.A. Mother's and Father's assignments of error are overruled.

III.

**{¶25}** The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

JENNIFER HENSAL
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

DENISE E. FERGUSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.