[Cite as *In re A.J.*, 2017-Ohio-9134.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: A.J.
      A.J.

C.A. No.     28653

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 14-07-0441
                   DN 14-07-0442

DECISION AND JOURNAL ENTRY

Dated: December 20, 2017

SCHAFER, Presiding Judge.

{¶1} Appellant, D.J. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed two of his minor children in the legal custody of their paternal grandparents ("Grandparents"). This Court affirms.

I.

{¶2} Father is the biological father of two children with the initials A.J.: a girl, born June 7, 2013; and a boy, born April 11, 2014. Although Father has other children, they are not parties to this appeal. The mother of A.J. and A.J. ("Mother") did not participate in the final dispositional hearing and did not appeal from the trial court's judgment.

{¶3} Before this case began, Summit County Children Services Board ("CSB") had a voluntary case with this family because Mother had attempted suicide and CSB was also concerned about domestic violence and substance abuse in the home. Because Mother did not comply with the requirements of the voluntary case plan, CSB filed this involuntary case on July

10, 2014.  A.J. and A.J. were later adjudicated dependent children and placed in the legal custody of CSB.

{¶4}    When this involuntary case began, Mother was living with Father, but had moved in and out of his home several times during their on and off relationship.  Father and Mother's relationship had been plagued by ongoing domestic violence, often with Mother as the perpetrator.  Even under a court-ordered case plan, Mother refused to engage in any services to address her serious mental health and substance abuse problems.  Although the case plan did not require Father to end his relationship with Mother, it did require that they engage in counseling to address the violence in their relationship.  Although Father complied with many of the requirements of the case plan, he did not engage in counseling with Mother and/or end his relationship with her.  Mother did not maintain contact with CSB or the trial court and continued to struggle with mental health and substance abuse problems.  Moreover, incidents of domestic violence continued between the parents throughout this case, including during the months that the final dispositional hearing was held.

{¶5}    Because Mother was not complying with the case plan, she was required to visit the children at the visitation center.  Father was permitted to visit the children at the home of their relative caregiver.  The children lived with an aunt during most of this case, but they were later placed in the home of Grandparents.  CSB eventually moved to have the children placed in the legal custody of Grandparents and Father alternatively moved for legal custody of the children.

{¶6}    Following a four-day hearing that was held over several months, the magistrate decided that A.J. and A.J. should be placed in the legal custody of Grandparents.  The trial court adopted the magistrate's decision the same day, pending the filing of timely, written objections.

Father objected to the magistrate's decision, arguing only that the best interest finding was not supported by the evidence. The trial court overruled Father's objection and placed A.J. and A.J. in the legal custody of Grandparents. Father appeals and raises two assignments of error.

II

### Assignment of Error I

**The trial court abused its discretion in granting legal custody of the minor children to their paternal grandparents as it is not in their best interest and father has substantially completed his case plan.**

{¶7} Father's first assignment of error is that the trial court erred in concluding that legal custody to Grandparents was in the best interest of his children. "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *See In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision [regarding legal custody] on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA 2002-09-236, 2003-Ohio-5984, ¶ 11.

{¶8} The juvenile court is guided by the best interest factors set forth in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the children, their wishes, their custodial history and their need for permanence in their lives. R.C. 2151.414(D)(1)(a)-(e). The juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850, 15CA010860, 2017-Ohio-1, ¶ 17. Of relevance here, those

additional factors include the children's adjustment to their environment; the mental and physical health of all persons involved; and whether there is violence, abuse, or neglect in any household involved. *See* R.C. 3109.04(F)(1).

{¶9} Father's argument is based primarily on his assertion that he had "complied with every facet of his case plan." This Court has repeatedly stressed, however, that "evidence of case plan compliance may be relevant to the trial court's best interest determination, but is not dispositive." *In re G.A.*, 9th Dist. Summit Nos. 28664, 28665, 2017-Ohio-8561, ¶ 13, citing *In re J.J.*, 9th Dist. Summit No. 22236, 2004-Ohio-6538, ¶ 8.

{¶10} Father also emphasizes that he has a family bond with his children "that must be preserved." The trial court's placement of the children in the legal custody of Grandparents did not sever that bond, however, because it leaves intact his residual parental rights including his right to visitation with his children. *See In re A.L.*, 9th Dist. Summit No. 28440, 2017-Ohio-7689, ¶ 18. In fact, because the children had been placed with Father's parents and Father had a good relationship with them, they were permitting him to spend every day with the children in their home.

{¶11} Grandparents agreed with other witnesses that, when Father visited the children without Mother, his interaction with them was always loving and appropriate. Although CSB still had some concerns that Father may have a drinking problem and that he was not employed, the primary concern expressed by CSB, the guardian ad litem, Grandparents, and Father's counselor was that Father continued to have a relationship with Mother. Mother had done nothing during this case to address her ongoing mental health and substance abuse problems or her long history of domestic violence with Father.

{¶12} Throughout this case, domestic violence continued between Mother and Father. Police were called to Father's home multiple times to respond to incidents of domestic violence that had involved weapons, substance abuse, and/or physical injuries. Father insisted that Mother was the one with the substance abuse problem and that she was always the aggressor in the domestic violence incidents between them. Even if Father's assertions about Mother were true, he had continued to allow her into his home throughout this case.

{¶13} For example, one month after Father moved for legal custody but before the hearing commenced, police responded to an incident of domestic violence between Mother and Father. One of the responding officers testified that both parents appeared to be intoxicated and that both parents had sustained minor injuries. Again, between the second and third hearing dates, police responded to Father's house because of an incident of domestic violence between Mother and Father. Mother was arrested because the police believed that she had been the primary aggressor and Father had sustained more serious injuries than Mother.

{¶14} After Mother was arrested for domestic violence against Father, he continued to call her and provide her with money while she was incarcerated. Father admitted during the final day of the hearing that he still helped Mother and had allowed her to stay at his home because she had no one else to turn to. Notably, Father never stated during his testimony that he would protect his children from Mother or the ongoing violence between them. In fact, Father had also told one of his counselors that he wanted Mother to be able to see the children. The trial court reasonably concluded that, if Father had legal custody of the children, he may not protect them from ongoing domestic violence between Mother and Father or other inappropriate behavior by Mother.

{¶15} Furthermore, Father does not argue that he could provide his children with a better home than Grandparents or that legal custody to them was not in the best interest of his children. All witnesses agreed that Grandparents had been meeting the children's needs and were loving and nurturing with them. Grandparents were providing the children with a safe and stable home and had ensured that the parents did not visit the children together and that Mother had no unsupervised contact with them. CSB fully supported legal custody to Grandparents and the guardian ad litem opined that legal custody to Grandparents was in the children's best interest.

{¶16} Given the evidence before the trial court, Father has failed to demonstrate that the trial court erred in concluding that legal custody to Grandparents was in the best interest of his children. Father's first assignment of error is overruled.

### Assignment of Error II

**The trial court erred as a matter of law in granting legal custody of the minor children to their paternal grandparents when [CSB] did not use reasonable case planning and diligent efforts for reunification with their father.**

{¶17} Father's second assignment of error is that CSB failed to make reasonable efforts to reunify him with his children. Father did not raise this issue at the hearing or through his objections to the magistrate's decision, so he has forfeited all but plain error. *See In re B.C.*, 9th Dist. Summit Nos. 26976, 26977, 2014-Ohio-2748, ¶ 24, citing Juv.R. 40(D)(3)(b)(iv). Because Father did not timely raise a reasonable efforts challenge in the trial court and does not argue plain error, this Court need not address this argument on appeal. *In re I.T.*, 9th Dist. Summit No. 27826, 2016-Ohio-4668, ¶ 13, citing *In re T.W.*, 9th Dist. Summit No. 27477, 2016-Ohio-92, ¶ 11-12. Father's second assignment of error is overruled.

III.

**{¶18}** Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

ELIZABETH ABBOTT, Guardian ad Litem.